Case.net:26SL-CC06700 - SOLOMON ET AL V LG ELECTRONICS USA, INC ET AL (E-CASE) - Docket Entries

| **Respond to Selected Documents |** **Sort by date:** Descending Ascending **Display options:** All Entries

**10/21/2026**

**Affidavit Filed**

AFFIDAVIT OF SERVICE for ALPHONSO INC DBA LG AD SOLUTIONS.

**Filed By:** BENJAMIN STEPHEN MCINTOSH

**On Behalf Of:** GEORGE SOLOMON, DEBORAH SOLOMON, EMMA DESAMBOURG, ANDREW BANNING, BRAD YOUNG, JESSICA YOUNG

**10/15/2026**

**Corporation Served**

Document ID - 26-SMCC-12473; Served To - LG ELECTRONICS USA, INC.; Served Date - 10/08/2026; Served Time - 09:46:03; Service Type - SD; Reason Description - SERV; Service Text -

**Corporation Served**

Document ID - 26-SMCC-12472; Served To - CARRY TECHNOLOGIES INC; Served Date - 10/08/2026; Served Time - 09:45:25; Service Type - SD; Reason Description - SERV; Service Text -

**Notice of Service**

LG ELECTRONICS USA, INC - Return of Service.

**Filed By:** BENJAMIN STEPHEN MCINTOSH

**On Behalf Of:** GEORGE SOLOMON, DEBORAH SOLOMON, EMMA DESAMBOURG, ANDREW BANNING, BRAD YOUNG, JESSICA YOUNG

**Notice of Service**

CARRY TECHNOLOGIES INC - Return of Service.

**Filed By:** BENJAMIN STEPHEN MCINTOSH

**On Behalf Of:** GEORGE SOLOMON, DEBORAH SOLOMON, EMMA DESAMBOURG, ANDREW BANNING, BRAD YOUNG, JESSICA YOUNG

**10/07/2026**

**Summ Issd- Circ Pers Serv O/S**

Document ID: 26-SMOS-2599, for ALPHONSO INC Summons Attached in PDF Form for Attorney to Retrieve from Secure Case.Net and Process for Service.

**Summons Issued-Circuit**

Document ID: 26-SMCC-12473, for LG ELECTRONICS USA, INC. Summons Attached in PDF Form for Attorney to Retrieve from Secure Case.Net and Process for Service.

**Summons Issued-Circuit**

Document ID: 26-SMCC-12472, for CARRY TECHNOLOGIES INC Summons Attached in PDF Form for Attorney to Retrieve from Secure Case.Net and Process for Service.

**10/06/2026**

**Filing Info Sheet eFiling**

**Filed By:** BENJAMIN STEPHEN MCINTOSH

**Pet Filed in Circuit Ct**

Class Action Petition.

**Filed By:** BENJAMIN STEPHEN MCINTOSH

**On Behalf Of:** GEORGE SOLOMON, DEBORAH SOLOMON, EMMA DESAMBOURG, ANDREW BANNING, BRAD YOUNG, JESSICA YOUNG

**Judge Assigned**

DIV 9

Electronically Filed - St Louis County - October 06, 2026 - 04:21 PM

**IN THE CIRCUIT COURT FOR ST. LOUIS COUNTY**
**STATE OF MISSOURI**

| | | |
|---|---|---|
| GEORGE SOLOMON,<br>DEBORAH SOLOMON,<br>EMMA deSAMBOURG,<br>ANDREW BANNING, and<br>BRAD YOUNG,<br>JESSICA YOUNG, on behalf of themselves and<br>those similarly situated,<br><br>*Plaintiffs,*<br>v.<br><br>LG ELECTRONICS USA, INC.,<br><br>Serve at:<br>CSC-LAWYERS INCORPORATING<br>SERVICE COMPANY<br>221 BOLIVAR ST<br>JEFFERSON CITY, MO 65101<br><br>ALPHONSO INC., d/b/a LG Ad Solutions,<br>and<br><br>Serve at:<br>THE CORPORATION TRUST COMPANY<br>CORPORATION TRUST CENTER<br>1209 ORANGE ST<br>WILMINGTON, DE 19801<br><br>CARRY TECHNOLOGIES INC., d/b/a<br>Hightouch<br><br>Serve at:<br>Telos Legal Corp.<br>222 E DUNKLIN STE. 102<br>JEFFERSON CITY, MO 65101<br><br>*Defendants.* | ) | Case No:<br><br>**JURY TRIAL DEMANDED** |

## CLASS ACTION PETITION

COME NOW Plaintiffs Solomon, Solomon, deSambourg, Banning, Young, and Young

Electronically Filed - St Louis County - October 06, 2026 - 04:21 PM

for their Class Action Petition against LG Electronics, USA., Inc., Alphonso Inc., and Carry Technologies Inc., state as follows:

**Introduction**

1. This is a Missouri consumer class action against LG Electronics USA, Inc. ("LG"), Alphonso Inc. ("LG Ad Solutions"), and Carry Technologies Inc. ("Hightouch").

2. A person going to the store or online to purchase a television ("TV") believes that what they are purchasing is just that, a TV.

3. But LG is not in the business of selling TVs, it's in the business of selling data mining devices. LG has made it so that the TV is not the product, *we are*. The data clandestinely collected from LG's customers is used to spam them with advertisements, enriching LG's ad business, LG Ad Solutions in the process. Not only that, but LG and LG Ad Solutions take that data and sell it to third parties.

4. LG Smart TVs are constantly mining, recording, storing, and selling data from whatever is on a user's TV screen. But LG is not only grabbing data from what is on the screen. It also takes data from any device connected to the TV whether that be by Bluetooth or hardwire connection.

5. If the LG Smart TV is being used only as a computer monitor and not as a Smart TV, the TV mines data from whatever is on the screen. This means that if a person's work computer is connected to the TV and they are looking at sensitive financial, medical, or other forms of data, the TV is grabbing that data and sending it to LG, LG Ad Solutions, and Hightouch to sell to third parties.

6. One might think that LG's data collection activities stop there, but they do not. LG Smart TVs are also constantly scanning the Local Area Network ("LAN") and connecting to

Electronically Filed - St Louis County - October 06, 2026 - 04:21 PM

and identifying devices on the network they are connected to and using them for unlawful advertisement activities. That means that LG Smart TVs are connecting to consumers mobile phones, laptops, personal computers, and even devices like printers, air purifiers, and thermostats.

7. The Smart TVs even attempt to connect to other nearby wireless networks to identify all devices and other identifiers on those networks too, even if those networks belong to persons who do not own an LG Smart TV.

8. It gets even worse. LG Smart TVs are capable of voice control either by built-in microphones or by microphones embedded in LG Magic Remotes. LG represents that those microphones listen to and record only direct commands but do not listen to and record ambient noise and conversation. [1]

9. This representation is patently false. Once the microphone is activated by one voice command, it begins listening to and recording any ambient noise or conversation not only in its direct vicinity, but up to sixty feet away.

10. LG TVs do not only record sound from those microphones. They are also capable of recording sound from any device that is plugged into the TV, even if voice control is not activated. For example, if a consumer is using the TV as a monitor and is in a telehealth appointment, the TV is able to record and transcribe the sound via the HDMI connection.

11. All of the data that the Smart TVs collect is recorded, transcribed, and sent to LG. LG calls the data that it collects on consumers their "fingerprints."

12. Even if a Smart TV is not connected to the internet, it will still record, transcribe, and store the log until it reconnects to a network, at which point it will upload the logs to LG. LG

[1] LG Elecs., Statement: Understanding Privacy on LG Smart TVs (Sept. 12, 2026), https://www.lg.com/global/newsroom/news/statements/statement-understanding-privacy-on-lg-smart-tvs/

Electronically Filed - St Louis County - October 06, 2026 - 04:21 PM

and its subsidiaries then take that data and sell it to other companies, all without consumers' knowledge or consent.

13. The data collected is not only for the purposes of targeted advertising. Indeed, the data LG collects or identifiers consumers' full names, dates of birth, data providers, IP addresses, geolocation, time zone, other personal identifying information, smartphone usernames, private health information, private financial information, and more. The Smart TVs even collect data relating to a consumer's energy and utility use.

14. LG has taken advantage of their access to people's households to profit off of this sensitive data, and these blatantly unlawful activities have likely affected as many as 1 million Missourians.

15. Consumers are paying LG so that it can misappropriate their data to turn a profit.

16. LG and LG Ad Solution's partnership with Hightouch allows LG to take the data that it collects from consumers and combine it with a large data repository that Hightouch maintains and supplies with data from other third-party data. Once combined, Hightouch's software essentially puts together puzzle pieces from the different data sources to identify a person in as much detail as possible.

17. LG, LG Ad Solutions, and Hightouch, work in concert to steal consumer data and create robust personal identity profiles of consumers in order to maximize their own profits all without consumer knowledge or informed consent, seriously invading the privacy of consumers and their permanent household members while exposing them to the dangers of identity theft from lackluster security protocols.

## Parties

18. Plaintiff George Solomon is a natural person, United States citizen, and resident

Electronically Filed - St Louis County - October 06, 2026 - 04:21 PM

of S. Louis County, Missouri.

19. Plaintiff Deborah Solomon is a natural person, United States citizen, and resident of St. Louis County, Missouri.

20. Plaintiff Emma deSambourg is a natural person, United States citizen, and resident of St. Louis County, Missouri.

21. Plaintiff Andrew Banning is a natural person, United States Citizen, and resident of St. Louis County, Missouri.

22. Plaintiff Brad Young is a natural person, United States Citizen, and resident of St. Louis County, Missouri.

23. Plaintiff Jessica Young is a natural person, United States Citizen, and resident of St. Louis County, Missouri.

24. Defendant LG Electronics USA Inc. ("LG") is foreign public corporation incorporated in Delaware, headquartered in New Jersey, and registered to do business in the State of Missouri.

25. All allegations of acts or omissions by LG include, but are not limited to, acts and omissions of LG's officers, directors, operators, managers, supervisors, employees, affiliates, subsidiaries, vice principals, partners, agents, servants, and owners, and that such acts and omissions were made with LG's express and/or implied authority, or were ratified or otherwise approved by LG, or that such acts or omissions were made in the routine normal course and scope of their agency and employment as LG's officers, directors, operators, managers, supervisors, employees, affiliates, subsidiaries, vice principals, partners, agents, servants and owners.

26. Defendant Alphonso Inc. ("Alphonso" or "LG Ad Solutions") is doing business as

Electronically Filed - St Louis County - October 06, 2026 - 04:21 PM

LG Ad Solutions.

27. Alphonso is incorporated in the state of Delaware and headquartered in the State of California.

28. LG owns a controlling majority stake in LG Ad Solutions. All of LG's Smart TVs are integrated with software created, used, purchased, retained, and/or otherwise controlled by LG Ad Solutions.

29. LG exercises total domination and control over LG Ad Solutions. LG Ad Solutions acts directly as an agent for LG in conducting business, specifically in conducting data collection business. LG retains no company other than LG Ad Solutions for data collection software integration, collection, and sale of consumer data.

30. All allegations of acts or omissions by LG Ad Solutions include, but are not limited to, acts and omissions of LG Ad Solution's officers, directors, operators, managers, supervisors, employees, affiliates, subsidiaries, vice principals, partners, agents, servants, and owners, and that such acts and omissions were made with LG Ad Solution's express and/or implied authority, or were ratified or otherwise approved by LG Ad Solutions, or that such acts or omissions were made in the routine normal course and scope of their agency and employment as LG Ad Solution's, directors, operators, managers, supervisors, employees, affiliates, subsidiaries, vice principals, partners, agents, servants and owners.

31. Defendant Carry Technologies Inc. ("Hightouch") is doing business as Hightouch.

32. Hightouch is incorporated in the state of Delaware and headquartered in the state of California.

33. Hightouch is not a subsidiary of LG or LG Ad Solutions.

Electronically Filed - St Louis County - October 06, 2026 - 04:21 PM

34. Hightouch is not a publicly traded corporation. Neither LG nor LG Ad Solutions retain an ownership interest in Hightouch.

35. All allegations of acts or omissions by Hightouch, but are not limited to, acts and omissions of Hightouch's officers, directors, operators, managers, supervisors, employees, affiliates, subsidiaries, vice principals, partners, agents, servants, and owners, and that such acts and omissions were made with Hightouch's express and/or implied authority, or were ratified or otherwise approved by Hightouch, or that such acts or omissions were made in the routine normal course and scope of their agency and employment as Hightouch's, directors, operators, managers, supervisors, employees, affiliates, subsidiaries, vice principals, partners, agents, servants and owners.

**<u>Jurisdiction, Venue, and Jury Trial</u>**

36. This is a civil case and class action matter

37. Venue is proper in this court because a substantial part of the events or omissions giving rise to Plaintiffs' claim occurred in St. Louis County, Missouri. LG and LG Ad Solutions have done substantial business with retailers and consumers in St. Louis County, LG and LG Ad Solutions unlawfully surveilled and expropriated data from consumers who own Smart TVs in St. Louis County, and LG and LG Ad Solutions substantially advertised and sold Smart TVs to consumers at locations in St. Louis County. Hightouch's software is integrated into every LG Smart TV that is sold in Missouri.

38. Jurisdiction is proper because LG, LG Ad Solutions, and Hightouch have established minimum contacts in Missouri such that maintenance of this suit does not offend traditional notions of fair play and substantial justice, and because LG, LG Ad Solutions, and Hightouch transact business in Missouri, make contracts in Missouri, gathered data from Smart

Electronically Filed - St Louis County - October 06, 2026 - 04:21 PM

TV customers located in Missouri, and committed tortious acts in Missouri, making them subject to Missouri's long arm statute. RS Mo Section 506.500.

39. This action arises out of LG and LG Ad Solution's significant contacts with Missouri because it arises out of Missourians' purchase and use of the millions of Smart TVs that LG has sold in this state as well as LG and LG Ad Solution's consistent and targeted practice of mining data from Missourians' devices and homes located in the state of Missouri. LG and LG Ad Solutions target Missourians' data to further the sales of the collected data to third parties seeking data specifically from Missouri.

40. This action also arises out of Hightouch's significant contacts with Missouri because it arises out of Hightouch's data collection activities targeted at Missourians owning LG Smart TVs and other devices in the same or nearby households to the Smart TVs from which Hightouch obtains Missourians' data. Hightouch intentionally targets Missouri consumers for data collection so that it may create a repository of Missouri consumer data which it then uses to further the sale of its software and products. Hightouch targets Missourians data to further sales of the collected data to third parties seeking data specifically from Missouri.

41. Plaintiffs demands a jury trial pursuant to the Missouri Constitution Art. 5 § 5 and RSMO § 510.190.

## General Allegations

42. LG sells a wide range of digital display and digital media products, digital appliances, and electronic vehicle chargers.

43. One form of digital display products that LG sells is Smart TVs.

44. A Smart TV is any television that can be connected to the internet without the need for a set-top box or streaming device. Like smartphones, a Smart TV can easily connect to

Electronically Filed - St Louis County - October 06, 2026 - 04:21 PM

other devices like a Bluetooth speaker. [2]

45. LG's Smart TVs are advanced television sets that can connect to the internet and provide a wide range of features beyond traditional TV functions. Some common capabilities of LG's Smart TVs include streaming services, web browsing, apps, screen mirroring, voice control, and multiple connectivity methods. [3]

46. LG's penetration into Missouri households is vast, giving it expansive access to viewing habits, application usage, and patterns of life across well over one million Missouri consumers.

47. LG has sold over 200 million Smart TVs worldwide.

48. Census records show that Missouri has roughly 2.5 million households. [4] National data shows that approximately 79% of U.S. households owned a Smart TV in 2024. [5] Applying that ratio to Missouri yields an estimated 1.98 million households with a Smart TV.

49. LG holds at least twenty-two percent of the U.S. Smart TV market. [6] With an average of 2.4 people per household, it is likely that more than 1 million Missourians live in a home with an LG Smart TV. [7]

50. LG is using those Smart TVs to monitor Missourians without their knowledge or informed consent, misappropriating data in the process, and invading the privacy of Missouri Smart TV consumers and their permanent household members.

---

[2] LG Elecs., What is a Smart TV? Smart TV Features & Technology Explained https://www.lg.com/us/experience/what-is-a-smart-tv?srsltid=AU7gw4WcFJCOUqWrDpaQjQdGCfRwpdG57FzsshhElLBM834aEOoiZDLo
[3] *Id.*
[4] U.S. Census Bureau, QuickFacts: Missouri, https://www.census.gov/quickfacts/fact/table/MO/PST045225
[5] https://www.thecurrent.com/marketing/americans-smart-tv-data-streaming-marketing
[6] Zachary Comeau, Samsung Leads in U.S. Smart TV Ownership, CE Pro (Dec. 10, 2024), https://www.cepro.com/audio-video/samsung-leads-in-u-s-smart-tv-ownership/.
[7] U.S. Census Bureau, QuickFacts: Missouri, https://www.census.gov/quickfacts/fact/table/MO/PST045225
[7] https://www.thecurrent.com/marketing/americans-smart-tv-data-streaming-marketing

Electronically Filed - St Louis County - October 06, 2026 - 04:21 PM

51. "As part of its strategy to expand . . . LG acquired majority stake of the U.S. advertising/content data analysis specialist, Alphonso, in 2021." [8]

52. Through this major acquisition, in 2013 LG established LG Ad Solutions which is now incorporated as Alphonso Inc. [9]

53. As of late 2024, LG's ad-supported streaming service is available on reportedly 200 million LG TVs worldwide. [10]

54. This scale grants LG outsized control of Missouri's connected TV market, allowing the company to harvest data on over one million consumers worth billions of dollars—all without their knowledge or informed consent.

## I. Automated Content Recognition and How it Works

55. The corporate desire to monitor consumer viewing habits is not new. Since the 1950s, Nielsen's has paid consumers to permit it to track the viewership habits of approximately 42,000 representative households. [11]

56. Consumers tracked by Nielsen's Ratings have a "people meter" device installed on their television, that they carry around with them which must be manually activated when they start and stop watching a show. [12]

57. Automated Content Recognition ("ACR") is different, and consumers are not paid for their participation despite the exorbitant economic value of the data being expropriated.

---

[8] LGE, LG Presents Its Vision To Become Media and Entertainment Platform Company, (accessed Dec. 9, 2025), https://www.lg.com/us/press-release/LG_vision_webOS%20summit_.pdf

[9] LG Acquires Controlling Stake in TV Data and Measurement Firm Alphonso, https://www.lg.com/global/newsroom/news/media-entertainment-solution/lg-acquires-controlling-stake-in-tv-data-and-measurement-firm-alphonso/

[10] LGE, LG Presents Its Vision To Become Media and Entertainment Platform Company, https://www.lg.com/us/press-release/LG_vision_webOS%20summit_.pdf

[11] Bill Shea, The Ultimate Nielsen FAQ: How we, and they, know how many of you are watching Sports on TV, NY Times (Mar. 22, 2022) https://www.nytimes.com/athletic/3194414/2022/03/22/the-ultimate-nielsen-faq-how-we-and-they-know-how-many-of-you-are-watching-sports-on-tv/?sub_id=FUiGLm-bZsH-cKzJREx1&refclick=ahiQiC-beDI-ny1Tg4Hn

[12] *Id.*

Electronically Filed - St Louis County - October 06, 2026 - 04:21 PM

58. ACR arose in 2011 when Shazam, a company known for pioneering the software algorithm that can identify a piece of music after sampling a few bars, demonstrated that it could do the same thing with TV clips. [13]

59. ACR has become a multi-billion-dollar global business. [14]

60. In 2017, ACR gained national attention when the FTC and the New Jersey Attorney General fined Vizio $2.2 million for collecting ACR data on 11 million consumers without their knowledge or consent. [15]

61. By 2021, Vizio reported that it had earned more profit from the sale of customer data than from TV sales. [16]

62. Generally, ACR works by capturing audio and visual data of what you're watching on TV, captured in hundredths of milliseconds, to build a "fingerprint" of the content and then matches that "fingerprint" with a database of known content. When the fingerprint matches then the ACR server can determine what piece of content is being watched. [17]

63. The below image demonstrates how ACR works:

---

[13] Lee Neikirk, How to Get Your Smart TV to Stop Spying on You, NY Times (Oct. 6, 2025), https://www.nytimes.com/wirecutter/reviews/can-smart-tvs-spy-on-you/?sub_id=xPGrbI-WQvy-5tGMMXfD&refclick=vznNbT-2qLu-Bir89DUc

[14] *Id.*

[15] FTC, VIZIO to Pay $2.2 Million to FTC, State of New Jersey to Settle Charges It Collected Viewing Histories on 11 Million Smart Televisions without Users' Consent (Feb. 6, 2017), https://www.ftc.gov/news-events/news/press-releases/2017/02/vizio-pay-22-million-ftc-state-new-jersey-settle-charges-it-collected-viewing-histories-11-million

[16] Adrianna Nine, Vizio Makes 2x More Selling Ads and Data Than it Does on TVs, Extreme Tech (Nov. 12, 2021), https://www.extremetech.com/electronics/328967-vizio-makes-2x-more-selling-ads-and-data-than-it-does-on-tvs#:~:text=Vizio%20may%20be%20known%20as,moneymakers:%20advertising%20and%20viewer%20data.

[17] Gianluca Anselmi, et al., Watching TV with the Second-Party: A First Look at Automatic Content Recognition Tracking in Smart TVs (Sept. 2024). https://www.semanticscholar.org/paper/Watching-TV-with-the-Second-Party%3A-A-First-Look-at-Anselmi-Vekaria/3735edee85a4183046244c06e60775c53e8d1875

Electronically Filed - St Louis County - October 06, 2026 - 04:21 PM




64. The ACR data collected about consumers is worth as much, or more, than the Smart TVs themselves, which is one reason Smart TVs have become so affordable over the past decade. [18]

65. Indeed, the more LG Smart TVs that end up in consumer households, the more profit LG is able to generate from selling those consumers' data to third parties.

66. ACR captures everything on your screen, not just TV shows, but also YouTube videos, security or doorbell camera streams, and video or photos you send via Apple AirPlay or Google Cast, and from other devices connected to your TV by HDMI, including personal

[18] *Id.*

Electronically Filed - St Louis County - October 06, 2026 - 04:21 PM

laptops, video game consoles, Blu-ray players, and more. [19]

67. Nearly three-fourths of U.S. households have a Smart TV with ACR. [20]

68. Experts have described ACR as "like someone has installed a camera 24-7 in your living room." [21]

## II. LG's Use of ACR

69. LG began incorporating ACR into their devices in 2013.

70. Initially LG outsourced its ACR operations and partnered with providers such as Cognitive Networks. [22]

71. Not long after, LG built its own in-house proprietary ACR and began manufacturing Smart TVs equipped with the spyware. [23]

72. LG's ACR monitors consumers by capturing audio and video from the more than 45 million LG Smart TVs in the U.S. and saves a "hash" every 10 milliseconds. [24] [25]

73. LG employs this tracking across all devices connected to the LG Smart TV, capturing raw data about not just the native streaming apps or built-in channels, but also external inputs such as cable, satellite, HDMI devices, gaming consoles, even if the Smart TV used simply as a monitor for the laptop. [26]

---

[19] *Id.*
[20] Rachel Cericola, et al., Yes, Your TV Is Probably Spying on You. Your Fridge, Too. Here's What They Know, NY Times (June 25, 2025), https://www.nytimes.com/wirecutter/reviews/advice-smart-devices-data-tracking/
[21] *Id.*
[22] TV ACR – A Brief History, State of Play, and Where Its Going, (Feb. 22, 2018), https://www.tvadsync.com/2018/02/22/tv-acr-a-brief-history-state-of-play-and-where-its-going/
[23] LG Smart TVs Get Global ACR Upgrade, Replacing Legacy Samba TV Technology, https://lgads.tv/insights/lg-smart-tvs-get-global-acr-upgrade-replacing-legacy-samba-tv-technology/#:%7E:text=Raghu%20Kodige%2C%20CEO,to%20info@lgads.tv.
[24] LG Ad Solutions, Welcome to the Future of TV Advertising, https://lgads.tv/
[25] Roland Freist, Samsung and LG Smart TVs Are Watching You. Here's How To Stop It, (Sept. 25, 2025), https://www.pcworld.com/article/2918574/samsung-and-lg-smart-tvs-are-watching-you-heres-how-to-stop-it.html
[26] Connect external video devices and switch input sources on a LG Smart TV, LG (Jan. 17, 2025), https://www.samsung.com/hk_en/support/tv-audio-video/connect-external-video-devices-and-switch-input-sources-on-a-samsung-smart-tv/?CID=afl-ecomm-rkt-cha-040122-url_FATCOUPON&utm_source=url_FATCOUPON&utm_medium=affiliate&utm_campaign=1&utm_content=377

Electronically Filed - St Louis County - October 06, 2026 - 04:21 PM

74. For example, if a consumer has their computer connected to the Smart TV and is using it as a monitor, the Smart TV will capture what is on the screen, every 10 milliseconds, and create a hash of that data before sending it to LG to sell to third parties.

75. In 2025, over 32.6 million Americans worked remotely. [27] Even if only a fraction of those persons used an LG TV as a monitor, LG had the capability to and was likely collecting data regarding whatever those persons were looking at on the screen.

76. Aside from tracking external inputs, LG Smart TVs also have the ability to scan for and connect to nearby devices on the same network that they are on. This same network is called the Local Area Network ("LAN").

77. LG Smart TVs are capable of identifying the IP address, geographic location, name of every Wi-Fi network in the vicinity and signal strength, channel numbers of neighboring Wi-Fi networks in range, and other devices on the network, even if not connected to the TV in any way, and the internal IP address of other devices on the network, alongside others. [28]

78. LG has admitted that they collect data that the Smart TVs discover on these other networks despite a lack of permission to collect that data.

79. On October 17, 2025, when discussing the extent of LGs invasive reach, The Global Head of Data Solutions for LG Ad Solutions, Julian Zilberbrand, stated "At LG, we know who is in the LG household. We know which devices are there. We know what you're exposed to on TV, and we know how to extend that reach into mobile." [29]

---

1357&rktevent=FATCOUPON_Gs1xcly2iJU-DNGiqLCDerWaAXZtRFJDAw&ranMID=47773&ranEAID=Gs1xcly2iJU&ranSiteID=Gs1xcly2iJU-DNGiqLCDerWaAXZtRFJDAw#:~:text=External+video+devices,+such+as,can+use+your+desired+device

[27] Hayley Spooner, *The State of Remote Work: 2025 Statistics*, Neat (May 13, 2025), https://us.neat.no/resources/the-state-of-remote-work-2025-statistics/.

[28] Scharron Harding, LG TV Shown Capable of Tracking User Activity Even When Offline, Ars Technica (Sept. 2026), https://arstechnica.com/gadgets/2026/09/lg-tv-shown-capable-of-tracking-user-activity-even-when-offline/.

[29] Robert Andrews, From Lean-Back to Lean-In: LG Ad Solutions Sees TV as a Direct Action Channel, Beet.TV (Oct. 17, 2025), https://www.beet.tv/2025/10/from-lean-back-to-lean-in-lg-ad-solutions-sees-tv-as-a-direct-action-

Electronically Filed - St Louis County - October 06, 2026 - 04:21 PM

80. Demonstrating that LG Smart TV's invade devices near the TV rather than keeping data collection to the TV itself, Tony Marlow, the Chief Marketing Officer at LG Ad Solutions stated "Most people are on their mobile phones while watching TV now. . . Within an LG TV household, we can extend the campaign footprint to the other devices in the household." [30]

81. LG Smart TVs connect to other devices on the same network as them and to other networks to harvest data about consumer's products, identifying information, and habits.

82. Worse yet, LG Smart TVs have the capability to listen, transcribe, and store sound around them even if the TV is not connected to a network.

83. Newer LG Smart TV models have built in microphones which can be used for "hands free control" of the device. [31]

84. Almost all other LG Smart TV models come with an LG Magic Remote in the box or are compatible with an LG Magic Remote. [32]

85. Magic Remotes contain the same or substantially similar voice control and recognition software as the built-in microphones. [33]

86. The voice control feature is activated when a consumer says, "Hi LG."

87. LG has represented that the Smart TV records voice commands given to the TV and sends them to third parties in foreign countries to be "processed". [34]

---

channel.html

[30] LG Ad Solutions' Tony Marlow on Connected TV & the Future of TV Advertising, YouTube (Mark Britton) (June 2, 2026), https://www.youtube.com/watch?v=nxz4GzRH-SY.

[31] LG Elecs., LG OLED evo G3 65 Inch Class 4K OLED TV (OLED65G3PUA), https://www.lg.com/us/tvs/lg-oled65g3pua-oled-4k-tv (last visited Sept. 16, 2026).

[32] Shivam Gupta, LG Magic Remote: Complete Compatibility & Buying Guide (2026), ANM Remotes (Apr. 7, 2026), https://anmremotes.com/blogs/news/lg-magic-remote-complete-compatibility-buying-guide-2026.

[33] LG Elecs., LG TV - Using Voice Commands, Help Library (July 17, 2026), https://www.lg.com/us/support/help-library/lg-tv-using-voice-commands--20153219134177.

[34] LG Elecs., Terms of Service, LG Apps, https://us.lgappstv.com/main/terms (last visited Sept. 16, 2026).

Electronically Filed - St Louis County - October 06, 2026 - 04:21 PM

88. However, LG has also represented that the Smart TVs do not record ambient noise or conversation. [35]

89. This representation is patently false. Recently, forensic investigators through their YouTube channel "Gamers Nexus" tested this representation by giving voice commands to the Smart TVs and seeing what thereafter the Smart TV would record and for how long. [36]

90. In one instance, they said, "Hi LG," waited ten seconds, and then began having a conversation about Jeep vehicles. The conversation was completely devoid of TV commands and thus constituted ambient noise. Still, the TV recorded, transcribed, and stored the entire conversation.

91. Gamers Nexus also tested the range of the microphone and found that it can be activated and listen to noise and conversation from up to *sixty feet* away or even in an entirely different room.

92. In another instance, one of them said "Hi LG" while two of his co-workers were having a work conversation elsewhere in the room. The Smart TV immediately began listening to that conversation, then recorded, transcribed, and stored it. This means that not only are account holder conversations being recorded, but also conversations of household members who had no opportunity to be informed of the clandestine recording abilities of the LG Smart TV

93. When a Smart TV is connected, the TV listens, transcribes, and sends the data to LG. When the device is not connected, the Smart TV continues to listen, transcribe, and record the information it hears, storing it until the device is re-connected when it then sends it to LG.

94. Because the TV is constantly listening, it records private and sensitive

[35] LG Elecs., Statement: Understanding Privacy on LG Smart TVs (Sept. 12, 2026), https://www.lg.com/global/newsroom/news/statements/statement-understanding-privacy-on-lg-smart-tvs/.
[36] Gamers Nexus, 216,000,000 Spy TVs | The LG Smart TV Problem, YouTube (Sept. 6, 2026), https://www.youtube.com/watch?v=6IFVTcM28KA.

Electronically Filed - St Louis County - October 06, 2026 - 04:21 PM

information as well as all other aspects of a consumer's daily life that is lived within the broad earshot of the Smart TV.

95. Gamers Nexus also found that even where the built-in microphone is turned off or is not activated, the Smart TV still shows that there is a secondary microphone active elsewhere in the Smart TV.

96. Even if an LG Smart TV is not equipped with a microphone or Magic Remote, it is still able to capture noise from devices connected to it via a wired connection.

97. For example, if a person working from home was using their LG Smart TV as a monitor and had their computer connected to the TV via an HDMI cable, the TV is capable of capturing the sound from a meeting, transcribing that sound, and sending it to LG to be sold to third parties. As discussed in more detail below, Plaintiffs and the Class members purchased, used, and/or lived in a household with LG TVs primarily for personal, family, and/or household purposes.

98. This creates a detailed log of a household's media consumption from what content was watched, when, and for how long, across all inputs and apps, and by every member of the household, not just account holders.

## III. What Data LG Smart TV's Collect

99. Furthermore, because ACR, metadata, and identifiers combine, the collected data becomes more than just "what show a consumer watched. [37]

100. ACR captures or infers highly personal attributes pertaining to consumers' race, sex, or religious and political beliefs, IP addresses, usernames, geolocation, and more, which fall

[37] Campaign Exposure, LG DSP Help Center (Nov. 30, 2025), https://help.dsp.samsungads.com/docs/campaign-exposure

Electronically Filed - St Louis County - October 06, 2026 - 04:21 PM

under sensitive personal data categories under Missouri state privacy law. [38]

101. LG Ad Solutions has a partnership with Hightouch, which has the effect of making its clandestine data sweeping even more intrusive on customers, household members, and even neighbors. LG Ad Solutions' partnership with Hightouch "empowers media and marketing teams to sync their first-party audiences directly to LG Ad Solutions, unlocking precising targeting and suppression capabilities for direct CTV campaigns. [39]

102. LG and LG Ad Solutions have never adequately informed consumers of their partnership with Hightouch, nor have they given consumers the opportunity to give any form of consent to Hightouch's activity. Thus, LG Smart TV owners do not have knowledge of and have never given consent to Hightouch's data collection and storage activities, or how those activities interact with LG's data collection to maximize the intrusiveness of LG's actions for its own profits.

103. Hightouch is a company that built a platform which sits on top of an organization's existing data infrastructure to turn a "data warehouse to a growth engine." [40]

104. Hightouch calls its platform a Composable Customer Data Platform ("CDP"). [41] A CDP "is software that collects and unifies first-party customer data from multiple sources to build a single, coherent, complete view of each customer." [42]

105. Hightouch's platform offers multiple types of data collection and analytic tools which a company can use to boost marketing impact and sales including Real-time

---

[38] RS Mo 407.1500(9)(a)-(b).
[39] Ian Maier, Introducing Hightouch's integration with LG Ad Solutions, (Jan. 4, 2025), https://hightouch.com/blog/introducing-hightouch-integration-with-lg-ad-solutions
[40] Hightouch, *Data Warehouse to Growth Engine: Activate Your Trusted Data*, https://hightouch.com/solutions/data (last visited Sept. 22, 2026).
[41] Hightouch, *Finally, a Customer Data Platform That Actually Delivers*, https://hightouch.com/platform/composable-cdp (last visited Sept. 22, 2026).
[42] Oracle, *What Is a Customer Data Platform (CDP)?*, https://www.oracle.com/cx/customer-data-platform/what-is-cdp/ (last updated Apr. 4, 2025)

Electronically Filed - St Louis County - October 06, 2026 - 04:21 PM

Personalization, Match Booster, Hightouch Events, Reverse ETL, Customer Studio, Intelligence, and Identity Resolution. [43]

106. "Match Booster helps ad platforms recognize more of your customers by adding additional identifiers, such as alternate emails, phone numbers, or device IDs, to the audiences and conversion events you sync from Hightouch." [44] Match Booster uses several concerning methods for data collection, including consumer data matching, work data, address data, and anonymous web visitor data. [45]

107. Hightouch's Consumer Data Matching works by combining identifiers collected by the organization using it such as email, phone number, name, address, device ID, or IP address, with data it maintains from third party data vendors, "using it to find additional identifiers that may belong to the same person, household, or device." [46]

108. Hightouch's Work Data matching operates by matching "employees to consumer profiles and devices . . . [enriching] those records with consumer emails, phone numbers, device IDs, and cookie IDs that ad platforms are more likely to match on." [47]

109. Match Booster address matching operates by matching "first-party name and address to data to person level identifiers in its identity graph including hashed emails, phone numbers, and device IDs" provided by organization it is integrated with. [48]

110. The below image from Hightouch's website shows how this Match Booster feature works:

---

[43] Hightouch, *Finally, a Customer Data Platform That Actually Delivers*, https://hightouch.com/platform/composable-cdp (last visited Sept. 22, 2026).
[44] Hightouch, Match Booster Overview, https://hightouch.com/docs/match-booster/overview (last updated Aug. 17, 2026).
[45] Hightouch, Matching Methods, https://hightouch.com/docs/match-booster/matching-options (last updated May 15, 2026).
[46] *Id.*
[47] *Id.*
[48] *Id.*

Electronically Filed - St Louis County - October 06, 2026 - 04:21 PM




111. Most concerningly, "Match Booster matches anonymous visitor IP addresses to known consumers and devices using *reverse IP lookup*. When [an organization] provides a first-party IP address, Hightouch filters the data to verify it comes from a residential IP address. If it does, Hightouch's identity graph matches that IP address to the people and devices associated with that household and sends those identifiers to ad platforms."

112. Hightouch's "Real-Time personalization lets [an organization] respond to what someone is doing on your website or app while they're still active."[49] It operates by combining two types of information: what the person is doing right now and what [the organization] *already know[s] about them*.[50] By using Hightouch's Intelligence software, LG is quite literally spying on what its customers are doing in real time, and cross-referencing other data to fully eliminate any privacy of their customers as well as anyone else in their household—and even in nearby households, regardless of whether those households have LG TVs. In this way, LG, LG Ad Solutions, and Hightouch have agreed to invade consumer's privacy through data harvesting, computer tampering, and wiretapping at an incredible scale.

---

[49] Hightouch, Real-Time Personalization Overview, https://hightouch.com/docs/real-time/overview (last updated Aug. 27, 2026).
[50] *Id.*

Electronically Filed - St Louis County - October 06, 2026 - 04:21 PM

113. Hightouch's Intelligence software allows an organization to "explore audience composition, measure experiment results, and track campaign performance – all from the same warehouse data [they] use to build and sync audiences." [51]

114. Hightouch's Identity Resolution "links related customer records into unified identities in [an organization's] warehouse, so every downstream product works from one consistent view of each person or account." [52] Identity Resolution operates by linking "related records across datasets to determine when they refer to the same real-world entity. It groups those records together into resolved identities (unified customer or account profiles) by building an identity graph that connects related identifiers and records." [53]

115. Once a consumer's identity is "resolved" Hightouch's "data teams make customer data available in Customer Studio" where the organization can then "use that data to build audiences: groups of customers they want to reach, suppress, analyze, or include in a campaign." [54]

116. All of this software – and the agreements between Hightouch and the other Defendants – allows LG Ad Solutions to build profiles on consumers based on what genre, when, how often, and what ads Consumers see. Not only that, Hightouch allows LG to *identify* individual consumers using the above-described methods. This yields "household-level content viewership" that is used for advertising. [55] [56]

117. Consumers have literally no protection when it comes to the data that LG Ad

---

[51] Hightouch, *Intelligence Overview*, https://hightouch.com/docs/campaign-intelligence/overview (last updated Aug. 17, 2026).
[52] Hightouch, *Identity Resolution Overview*, https://hightouch.com/docs/identity-resolution/overview (last updated Aug. 17, 2026).
[53] *Id.*
[54] Hightouch, *Customer Studio Overview*, https://hightouch.com/docs/customer-studio/overview (last visited Sept. 22, 2026).
[55] App Launch, LG DSP Help Center (July 1, 2024), https://help.dsp.samsungads.com/docs/app-launch
[56] Linear Ads, LG DSP Help Center (Sept. 28, 2023), https://help.dsp.samsungads.com/docs/linear-ads

Electronically Filed - St Louis County - October 06, 2026 - 04:21 PM

Solutions uses, in partnership and agreement with Hightouch, to triangulate ever more invasive "fingerprints" about LG Smart TV customers. These customers never were given notice or the ability to reject data collection and triangulation by Hightouch that would effectively allow LG to know who is in the house, who is nearby, what devices they have, and personal details about those people (whether sex, race, sexual preference, medical status, etc.).

118. On January 4, 2025, Hightouch released a press release advertising its integration with LG Ad Solutions and LG Smart TVs. The press release highlights LG's "unparalleled access to targeted groups of household buyers" and lists the integration's key benefits:

a. "Precise first-party targeting and suppression: Build custom audiences using a visual audience builder that has direct access to the data already in your data warehouse. Onboard audiences to LG Ad Solutions to target specific households or suppress active customers from your campaigns."

b. "Expanded audience reach: Reach and suppress your targeted audiences across over 40M LG Smart TVs and 300M additional addressable devices in the US. Use Hightouch's Match Booster product to translate emails, phones, and Mobile Ad IDs into household LG devices for increased reach and impact."

c. "Direct insight into incremental reach over linear, tune in, attribution, and direct feedback loops with third party measurement partners: Use LG Ad Solutions' trusted Automated Content Recognition (ACR) data to understand who is viewing your ads, tuning into your shows, and converting into paid customers." [57]

119. LG's consumer profiles include cross-device or cross-screen linkage, meaning that data collected from Smart TVs is correlated with other online activity and smart devices to

---

[57] Ian Maier, *Introducing Hightouch's Integration with LG Ad Solutions*, Hightouch (Jan. 4, 2025), https://hightouch.com/blog/introducing-hightouch-integration-with-lg-ad-solutions.

Electronically Filed - St Louis County - October 06, 2026 - 04:21 PM

facilitate cross-device ad targeting and tracking without the informed consent of customers, household members, or others from whom LG clandestinely collects this data. [58]

120. LG's ACR data collection, when combined with identifiers, metadata, and network information maintained by LG, LG Ad Solutions, and Hightouch, becomes a powerful tool for profiling, targeting, and behavioral tracking, often without informed consent.

121. LG's consumer profiles include intimate details like political leanings, sexual orientation, health interests, marital status, family composition and age, and religion. Those data points contain information that average consumers have a reasonable expectation of privacy in.

122. Worse yet, Hightouch's integration with LG Ad Solutions allows LG to identify exactly who owns the Smart TV, where they are, what they are watching, and how to contact them (that is, working with Hightouch's Match Booster, LG Ad Solutions can determine the full picture of who you are and where to send targeted advertisements so those advertisements reach the intended target).

123. By integrating Hightouch's IP identifying software, LG is able to discover, collect and sell information in the following format: John Doe, at 123 Example Lane, phone number, IP address, watched Fast and the Furious last night; to any company willing to buy that information.

124. As part of Hightouch's agreement with LG and LG Ad Solutions, the consumer data that LG provides to Hightouch becomes a part of its vast warehouse of stored consumer data that it uses to operate its Match Booster, Identity Resolution, Consumer Data, and other data profiling software. This all occurs without the knowledge or consent of LG Account holders and their household members.

125. Other large corporations purchase, lease, or otherwise acquire Hightouch software

[58] LG Ad Solutions, https://lgads.tv/

Electronically Filed - St Louis County - October 06, 2026 - 04:21 PM

because of its ability to match data and personally identify consumers.

126. Hightouch advertises its warehouse of stored consumer data that it receives from third parties as the driving force behind its software. Without this large data store, key features like Match Booster would become useless and Hightouch would not be able to sell its software to other large corporations. LG is literally selling the private information of its customers, and their household members, to inflate the power and wealth of a third party, to the detriment of the privacy rights of LG Account holders and their household members.

127. LG Smart TVs are not a passive mode of entertainment, but a relentless surveillance device when ACR is activated.

128. This relentless surveillance is indiscriminate and includes data collection not only from adults, but from minors too. Any person in the household can be identified with LG, LG Ad Solutions, and Hightouch's powerful and invasive data collection tools.

129. From August 28, 2013, through the present, LG has operated an unlawful ACR data collection system, because consent from consumers is not informed, privacy choices are not meaningful, users cannot reasonably understand the surveillance model and are not fully informed of the nature and extent of this surveillance model, and the system defaults towards maximal data extraction.

130. From August 28, 2013, through the present, LG engaged in false, deceptive, unfair, or misleading business practices relating to the collection and use of ACR data without adequate disclosure to consumers and by obtaining consent from consumers in a deceptive or misleading manner.

131. LG, LG Ad Solutions, and Hightouch's unlawful conduct was calculated to acquire or deprive money or other property from consumers.

Electronically Filed - St Louis County - October 06, 2026 - 04:21 PM

## IV. LG Smart TV's Security Weaknesses

132. The Gamers Nexus investigation does more than just show what LG is doing. It shows what a hacker has the ability to do with the LG Smart TV as a result of serious security flaws in the devices. Consumers would not have purchased LG Smart TVs had they known that LG clandestinely collects incredibly detailed and private information that is vulnerable to attack. Indeed, a bad actor could attack and access LG Smart TVs in a way that would allow them to collect *even more data* than LG collects, yet LG Smart TVs have completely inadequate security features to prevent such an eventuality.

133. The forensic investigators were able to access the Smart TVs and view all of the data logs stored by the TV. This means that the data collected by LG is not only accessible by LG, but by anyone with the means and motive to obtain it.

134. They also showed that a compromised LG Smart TV could capture audio through its microphone even when the TV appears to be off.

135. Gamers Nexus demonstrated that all of this could be easily done because the Smart TVs suffer from remote code execution vulnerabilities. [59]

136. A remote code execution attack is one where a hacker can run malicious code on a target system without having physical access to the hardware. [60]

137. LG has a legal duty to refrain from selling devices with such vulnerability to customers and, at minimum, to discover vulnerabilities like this one and remedy them as soon as possible.

---

[59] Pieter Arntz, *LG TV Flaws Could Let Attackers Listen In, Even in Standby Mode*, Malwarebytes (Sept. 7, 2026), https://www.malwarebytes.com/blog/privacy/2026/09/lg-tv-flaws-could-let-attackers-listen-in-even-in-standby-mode.

[60] Cloudflare, *What Is Remote Code Execution?*, https://www.cloudflare.com/learning/security/what-is-remote-code-execution/ (last visited Sept. 24, 2026).

Electronically Filed - St Louis County - October 06, 2026 - 04:21 PM

138. A hacker can use remote code execution for remote access of the device or network, malware deployment, data theft, data destruction, DoS attacks, and more. [61]

139. This is a significant vulnerability which LG has known about for months, if not years, without taking any action to remedy it.

140. LG fails to disclose these security vulnerabilities to consumers on its website, packaging, or materials associated with LG Smart TV purchases even though these issues are material to any consumer's decision to purchase an LG Smart TV.

141. Nothing on the product packaging or in the materials associated with the purchase of an LG Smart TV disclose the material fact that a hacker can easily access their TV, turn on the microphone, and listen to whatever is in range. Nor does the packaging or materials disclose the material fact that a hacker can access all the data collected by the LG Smart TVs and use it for malicious purposes.

142. LG fails to inform consumers in connection with the purchase of Smart TVs that it fails to remedy significant security vulnerabilities, amounting to material omissions of fact concerning data privacy and safety that the average consumer would consider when deciding whether to purchase an LG Smart TV.

## V. LG's Former Smart TV Privacy Policy

143. On December 15, 2025, Texas Attorney General Ken Paxton sued LG and other Smart TV manufacturers based on similar allegations to those here.

144. Pursuant to its settlement agreement with Texas, LG updated its privacy policy on April 28, 2026.

145. Shortly before implementing the new policy, LG informed Smart TV users with

[61] *Id.*

Electronically Filed - St Louis County - October 06, 2026 - 04:21 PM

an on-screen pop-up stating that the policy was being updated. It stated in few words what was being added or changed and required users to agree before they continued using the TV. It essentially required them to pre-agree to an agreement that they had not even seen in order to use the TVs that they had purchased and had already been using. In other words, the products consumers purchased were held hostage, requiring "agreement" to privacy terms for the TV to be even usable. No consumer agreed to allow their TV to be held hostage so that LG could cram "privacy" policies down their throats, but LG attempted to manufacture "assent" that, in reality, was non-existent.

146. Plaintiffs and the Account Holder Class members were required to agree to the previous policy when they first turned on their Smart TV. Household Class members were not informed and gave no consent whatsoever. That policy was insufficient to establish knowledge, notice, or informed consent, as outlined more fully below. Certainly, that policy did not inform consumers that their data would be coalesced with other data from Hightouch to triangulate precise and incredibly private personal information about the user, their household members, minors, their neighbors, and likely others.

147. LG's user interface ("UI") revealed a surveillance-by-default design philosophy that is intended to manipulate consumer consent to align with its business interests. This scheme is illustrated in the following three ways.

148. First, consent was not informed because LG relied on non-intuitive nomenclature— deceptively and misleadingly naming their ACR data collection program Viewing Information Agreement.

149. The mislabeling of ACR on the consent screens presented to consumers did not put them on notice, let alone give rise to any reasonable inference, about what activity they were

Electronically Filed - St Louis County - October 06, 2026 - 04:21 PM

enabling and certainly did not inform them that the Viewing Information Agreement permitted continuous real-time capturing of every sound and image on their Smart TV every 10 milliseconds.

150. Second, the Viewing Information Agreement accessible on LG Smart TVs used opaque and non-intuitive disclosures to present ACR to consumers in a deceptive and misleading manner.

151. For example, LG told consumers that "by agreeing to the Viewing Information Agreement, [they] understand that detailed information about the content [they] watch will be collected using Automatic Content Recognition software, and this information can be used and shared with [LG's] third-party partners for advertising purposes and as described in the Privacy Policy.

152. LG's disclosures violated principles of informed consent because consumers were not given a sufficient or clear understanding of what data categories, recipients, or purposes are actually involved by opting in to the Viewing Information Agreement.

153. Third, consent was not informed because consent is requested during forced initial set up. That occurs after a consumer has already purchased the TV.

154. When LG Smart TVs were turned on, consumers were forced to click through a multi-page onboarding flow before landing on a consent screen.

155. Upon finally reaching the consent screen, consumers were presented with six "agreements": (1) Terms of Use, Privacy Policy, (2) Viewing Information Agreement, (3) Voice Information Agreement, (4) Interest-Based and Cross-Device Advertising Agreement, (5) Marketing Communications Agreement, and (6) Who.Where.What? Agreement.

156. While all six agreements and their respective boxes remain unchecked; LG

Electronically Filed - St Louis County - October 06, 2026 - 04:21 PM

capitalized on the "Paradox of Choice" which concludes too many choices actually limit a consumer's freedom of choice because an increase of options increases the difficulty of knowing which choice is best. [62]

157. Taking advantage of this paradox of choice, LG's onboarding page pre-selects "Select all," knowing consumers will not have the opportunity to review every agreement.

158. Therefore, all or nearly all consumers clicked Select all to simply finish the initial set up, as the TVs they already purchased would not be useable.

159. LG failed to inform consumers, however, that in order to move past this screen, a user needed only accept the Terms of Use and Privacy Policy.

160. LG intentionally created this deceptive consent architecture to present the consents and notices when consumers were least likely to read and carefully consider them in their eagerness to start using the new Smart TV that they purchased and owned.

## VI. LG's New Smart TV Policies

161. Both the new and previous iterations of LG's Privacy Policy fail for lack of consideration.

162. LG states in both its new and former policies that it "[reserves] the right to change this privacy policy from time to time in our sole discretion. If material changes are made to the privacy policy, we will notify you by placing a prominent notice on the Services or via email." [63]

163. This clause makes any agreement between LG and consumers illusory and

[62] The Paradox of Choice (accessed Dec. 9, 2025), https://thedecisionlab.com/reference-guide/economics/the-paradox-of-choice

[63] LG Electronics, U.S.A., Privacy Policy, Section J (April 28, 2026); LG Electronics, U.S.A., Privacy Policy, Section J (December 11, 2025); LG Electronics, U.S.A., Privacy Policy, Section J (September 25, 2025); LG Electronics, U.S.A., Privacy Policy, Section J (April 3, 2025); LG Electronics, U.S.A., Privacy Policy, Section J (April 28, 2024); LG Electronics, U.S.A., Privacy Policy, Section J (July 3, 2023); LG Electronics, U.S.A., Privacy Policy, Section J (January 1, 2023); LG Electronics, U.S.A., Privacy Policy, Section J (October 12, 2022). https://privacy.us.lg.com/policies/en/?name=privacy-policy

Electronically Filed - St Louis County - October 06, 2026 - 04:21 PM

therefore unenforceable as a contract as LG has not actually assented to any binding obligations.

164. Since 2020, LG has changed its Privacy Policy almost twenty times without requiring consumers to re-assent. Instead, it exercises its "sole discretion" to change the policy without any regard to what consumers may or may not agree to.

165. The sheer amount of times that LG has changed this policy without consumer consent underscores how illusory the "agreement" really is.

166. The same is true with LG's Terms of Use policy. That policy states that it is "allowed to change or amend [its] Terms of Use from time to time to correct editorial defects or phrase them more clearly without notice." [64]

167. Buried within its arbitration agreement, LG states that it "retains the right to modify this Arbitration Agreement in the future. . . In the event that LGE makes any material changes to this Arbitration Agreements it will notify you." [65]

168. LG has changed its Terms of Use at least four times in the past two years.

169. LG has not given consumers the opportunity to expressly accept or reject these modifications.

170. LG's most current Smart TV privacy policy suffers from similar deficiencies as the last. The Viewing Information Agreement discussed above is now the "ACR and Viewing Information Agreement." [66]

171. The policy still fails to inform consumers, put them on notice, or give rise to any reasonable inference, about what activity they are enabling and certainly does not inform them that the ACR and Viewing Information Agreement permits continuous real-time capturing of

[64] LG Electronics, *LG Apps: Terms of Use*, ¶ 24 https://us.lgappstv.com/main/terms (last visited Sept. 24, 2026).
[65] *Id.* at ¶ 21(m).
[66] LG Elecs., Terms of Service, LG Apps, https://us.lgappstv.com/main/terms (last visited Sept. 16, 2026).

Electronically Filed - St Louis County - October 06, 2026 - 04:21 PM

every sound and image on their Smart TV and other devices every 10 milliseconds. The policy also fails to inform them of the wiretapping of Account Holder and Household Member oral conversations.

172. The policy explains ACR as collecting Viewing Information "to identify the content you watch or listen to on <u>your device</u>. . . ACR software is a technology that identifies and analyzes content to provide relevant information or enhance user experiences."

173. That explanation falls far short of how ACR actually works and is insufficient to put consumers on notice as to what their Smart TV is actually doing.

174. Worse yet, the policy does all but expressly admit that ACR is collecting sensitive information. When discussing its collection of Viewing Information, the policy states that the "Viewing Information collected and used is limited, <u>to the extent practicable</u>, to non-sensitive information (avoiding sensitive information such as medical or health information)."

175. The policy does not state that it is not collecting that information at all. LG does nothing to actually refrain from collecting this highly sensitive information despite its misleading statements to the contrary.

176. The only reason LG even changed their policy to become slightly more forthcoming was because they faced massive class litigation in Texas and did so pursuant to a settlement agreement.

177. If researchers and experts had not started catching on to their unlawful activities, LG would have continued hiding those activities from consumers to the extent that they were previously.

## VII. LG Smart TV's Persistent Problems

178. LG may have implemented a new privacy policy, but the same problems persist.

Electronically Filed - St Louis County - October 06, 2026 - 04:21 PM

179. LG's opt-out/opt-in architecture undermines the adequacy of meaningful choice in two ways.

180. First, LG buries consumers' ability to exercise their privacy choices behind multi-step menus.

181. For example, consumers must circumnavigate a long, non-intuitive path to exercise their right to opt-out (Home, Settings, Accessibility, Support, Privacy & Terms).

182. With additional multi-step paths and toggles to access the six consent agreements displayed on the content screen under User Agreements and Do not Sell My Personal Information.

183. Second, privacy choices are not meaningful because opt-out rights are scattered across four or more separate menus which require approximately 40+ clicks.

184. Previously, to fully opt-out of ACR and related ad tracking on LG Smart TVs, consumers were required to opt-out of six user agreements: (1) Terms of Use, Privacy Policy, (2) Viewing Information Agreement, (3) Voice Information Agreement, (4) Interest-Based and Cross-Device Advertising Agreement, (5) Marketing Communications Agreement, and (6) Who.Where.What? Agreement and the Do Not Sell My Personal Information option. Each of which appear in different parts of the setting UI.

185. If a consumer did not accept these agreements or later chose to opt-out, they were no longer allowed to use the Smart TV features despite having purchased a Smart TV advertised as having the features of a Smart TV. Therefore, a consumer who wished to use the features that the TV marketed itself as providing, on the TV that they purchased and own, could not use those features without opting in to data collection.

186. Since the Texas settlement, to fully opt-out of ACR and related ad tracking on LG

Electronically Filed - St Louis County - October 06, 2026 - 04:21 PM

Smart TVs, consumers are required to: (1) Open the settings menu; (2) navigate to general settings; (3) navigate to system settings; (4) navigate to additional settings; (5) toggle off "Live Plus"; (6) navigate back to the main settings page; (7) navigate to the support menu; (8) navigate to the privacy and terms menu; (9) navigate to the advertising page; (10) toggle on "Limit Ad Tracking"; (11) navigate back to the privacy and terms menu; (12) navigate to the user agreements page; (13) uncheck the Viewing Information Agreement; (14) uncheck the Voice Information Agreement; (15) uncheck the Interest-Based Advertisement Agreement; (16) navigate back to the settings menu; (17) navigate to the support menu; (18) navigate to the privacy and terms page; and (19) toggle "Delete my Personal Information. [67]

187. Even if a consumer chooses to opt out of the agreements, ACR data collection still continues. [68]

188. The only way to truly opt out of ACR is to go through this entire process and then disconnect the Smart TV from the internet, which defeats the whole purpose of purchasing the Smart TV in the first place.

189. Conversely, LG provides consumers with a one-click enrollment option to opt-in during the initial start-up process.

190. When a consumer first opens their LG Smart TV, they are shown five agreements at once. The Terms of Use, Privacy Policy, ACR / Viewing Information Agreement, Voice Information Agreement, and Internet Based Cross Advertising Agreement. A box that states "Agree to All" is pre-checked.

---

[67] Craig Donaldson, *I stopped my TV from spying on me by adjusting these 5 settings*, Pocket-lint, https://www.pocket-lint.com/i-stopped-my-lg-tv-from-spying-on-me-by-adjusting-these-settings/ ([date]).
[68] David Nield, *'People Often Consent to Things They Don't Fully Understand': The LG TV Privacy Fiasco Is Far from Over, Security Experts Say — Despite LG Strongly Denying Spying Claims*, Yahoo Tech (Sept. 12, 2026), https://tech.yahoo.com/cybersecurity/articles/people-often-consent-things-dont-143000516.html.

Electronically Filed - St Louis County - October 06, 2026 - 04:21 PM

191. It would take a user over 1,200 clicks on the remote to read all of these policies and it would take between 3.8 to 4.8 hours for an adult at an average reading level.

192. LG states that in order to move past that screen, a consumer only needs to accept the Terms of Use and Privacy Policy. But, it fails to inform the consumers of that fact and instead makes it appear as though they have no choice but to "Agree to All."

193. The juxtaposition between LG's one-click opt-in enrollment and the 40+ clicks spread across multiple menus to opt-out are quintessential examples of unlawful dark patterns, including "Privacy Zuckering," tricking consumers into sharing more private information than they intended or would have knowingly agreed to, and "Roach Motel," tricking consumers with easy opt-ins while making it extremely difficult to later opt-out. [69] [70]

194. Even if a consumer does go through the opt out process, LG *still* uses ACR to collect data. [71] In a recent statement, LG represented that after a user opts out ACR is not used for advertising purposes. [72] But it does not state that ACR is not used for other purposes.

195. LG's disclosures are false, deceptive, and misleading.

196. Most consumers do not know, nor have any reason to suspect, that LG Smart TVs are capturing in real-time the audio and visuals displayed on the screen and using the information to profile them for advertisers.

197. LG takes advantage of consumers' naivety when it comes to the technical

---

[69] Kaveh Waddell, Your Smart Devices Are Trying to Manipulate You With 'Deceptive Design,' Consumer Reports (Apr. 17, 2023), https://www.consumerreports.org/electronics/internet-of-things/smart-devices-trying-to-manipulate-you-with-dark-patterns-a6366326597/

[70] Staff Report, Bringing Dark Patterns to Light, FTC (Sept. 2022), https://www.ftc.gov/reports/bringing-dark-patterns-light

[71] David Nield, *'People Often Consent to Things They Don't Fully Understand': The LG TV Privacy Fiasco Is Far from Over, Security Experts Say — Despite LG Strongly Denying Spying Claims*, Yahoo Tech (Sept. 12, 2026), https://tech.yahoo.com/cybersecurity/articles/people-often-consent-things-dont-143000516.html.

[72] LG Electronics, *Understanding Privacy on LG Smart TVs*, LG Newsroom (Sept. 12, 2026), https://www.lg.com/us/newsroom/corporate/statement-understanding-privacy-on-lg-smart-tvs.

Electronically Filed - St Louis County - October 06, 2026 - 04:21 PM

possibilities within a Smart TV.

198. LG's UI does not provide any visual indication to consumers that ACR is actively capturing the audio and visual from their Smart TV, such as a red-light or a message advising that the TV is "recording."

199. Consumers cannot reasonably infer surveillance is happening on their Smart TVs in the absence of any visual cue.

200. Consumers, moreover, cannot reasonably understand or infer how LG collects viewing data because it is not clearly stated to them.

201. LG's consumer disclosures rarely disclose ACR as the way it collects consumer data, let alone that ACR can collect viewing data from HDMI ports, cable/satellite boxes, DVDs/Blu-rays, gaming consoles, and laptops connected as monitors.

202. LG often uses vague euphemisms for behavioral advertising and personalized advertising, which typically relies on viewing data (ACR), app usage, device identifiers, household inferences, and location-related meta data.

203. LG's collection of viewing data is excessive, disproportionate, and unnecessary for the specific purposes disclosed to consumers.

204. "Personalized content" is not a legitimate purpose for collecting ACR data about consumers, and it is not the real purpose for the invasive spying LG undertakes.

205. Providing consumers with personalized content does not require the capture of ACR fingerprints every 10 milliseconds.

206. To personalize a homepage or recommend shows, LG would only need simple, high-level indicators, such as which apps were opened, what genres are preferred, what shows were recently watched within the streaming apps that already collect this data.

Electronically Filed - St Louis County - October 06, 2026 - 04:21 PM

207. The data LG collects about consumers is, in reality, for targeted advertising—not to provide consumers with "personalized content."

208. Personalized content does not require tracking content on external devices.

209. ACR monitors anything that appears on the screen, including game consoles like PlayStation and Xbox; Apple TV, Roku, Fire Stick; cable/satellite boxes; and laptops via HDMI.

210. None of which contributes to LG providing consumers with "personalized content."

211. Personalized content improves recommendations, helps surface content consumers are likely to enjoy, and can be done with minimal signals that do not require sharing with third-party advertising partners.

212. "Targeted advertising" is not a legitimate purpose for collecting ACR data about consumers.

213. The intrusiveness, granularity, continuity, and cross-device nature of LG's ACR tracking far exceeds what is reasonably necessary to provide consumers with "personalized content."

214. While detailed or behavioral data may enhance the relevance of advertisements, this type of data is not strictly necessary to deliver targeted advertisements.

215. At minimum, advertisers can rely on significantly less data, such as contextual information, to deliver relevant advertisements.

216. Since ACR derived viewing data elements are not essential to show consumers targeted and precise behavioral advertisements, this method of tracking can only be described as extreme, granular, and continuous surveillance.

217. This kind of invasive data harvesting is only needed to increase advertisement

Electronically Filed - St Louis County - October 06, 2026 - 04:21 PM

revenue, which does not satisfy a consumer-necessity standard.

218. Minimal ad-supported systems could show non-targeted ads. This alternative is both functional and privacy preserving.

219. LG chooses precision targeting which requires unnecessary data harvesting sacrificing Account Holder and Household member privacy to maximize advertising profits.

220. The existence of an alternative demonstrates LG's data collection practices are excessive and not limited to what is reasonably necessary.

221. Lastly, to run targeted advertisements, LG shares consumers' viewing data with demand-side platforms, ad networks, measurement companies, data brokers, and cross-device graphing companies.

222. Sharing data with third parties is not, and never was, necessary for LG's core delivery service, which provides consumers with access to streaming services.

223. Worse yet, LG's policies have never mentioned Hightouch, or its corporate name Carry Technologies Inc.

224. None of the five policies, or formerly six, that a consumer is presented contain the fact that Hightouch is integrated in all LG Smart TVs. None of those policies inform the consumer that their data is being collected by both LG and Hightouch, compared to other data, and being used to uncover all of the above-described personal identifiers.

225. None of the policies inform consumers that a third-party company is storing the data that it collects and creates about the consumers in a large database that it uses to operate and sell its software. The policies do not inform consumers that Hightouch generates revenue off *stealing their data*. Upon information and belief Hightouch agreed with the other Defendants to keep its involvement a secret from consumers to conceal the invasiveness of data collection.

Electronically Filed - St Louis County - October 06, 2026 - 04:21 PM

226. No consumer owning an LG Smart TV has consented to Hightouch's collection, storage, use, and sale of the data that it collects and is given or sold by LG and LG Ad Solutions.

**VIII. The Value of Consumer Data**

227. "The world's most valuable resource is no longer oil, but data." [73]

228. In 2022, the global market for data broker services was estimated at $247.4 billion dollars. By 2028, the market is expected to reach a value of $407.5 billion dollars. [74]

229. LG Ad Solutions has reported it could generate up to *one billion dollars* in revenue this year. [75]

230. Hightouch has reported that it reached $100 million in annual recurring revenue. [76] Before its integration with LG Ad Solutions, Hightouch generated less than a quarter of that revenue.

231. That exorbitant amount of revenue comes from collecting, storing, and selling LG Smart TV consumer's data without their knowledge or informed consent.

232. LG sells data to third parties including large credit reporting agencies like Experian and Transunion.

233. Consumers own their sensitive and private data. But LG knows just how much revenue it can generate if it gains access to that data, especially if it can do so without compensating the owners of that data.

234. LG's business model is to sell consumers an LG Smart TV but not allow them to

---

[73] *The World's Most Valuable Resource Is No Longer Oil, but Data*, Economist (May 6, 2017), https://www.economist.com/leaders/2017/05/06/the-worlds-most-valuable-resource-is-no-longer-oil-but-data.
[74] Lukas Stein, *What Your Data Is Actually Worth*, Datapods (Oct. 10, 2023), https://www.datapods.app/en/blog/consumer/what-your-data-is-actually-worth.
[75] BigGo Finance, *LG Ad Solutions Revenue Surges 50% in First Half; IPO Plans Remain on Track*, https://finance.biggo.com/news/a43b35dd-7cad-4ea7-bba7-ea6cd8fafd95 (Aug. 5, 2026).
[76] Donna Joseph, How Hightouch Reaches $100 Million in Annual Recurring Revenue, SME Business Review (Apr. 17, 2026), https://smebusinessreview.com/growth-and-expansion/how-hightouch-reaches-100-million-annual-recurring-revenue.

Electronically Filed - St Louis County - October 06, 2026 - 04:21 PM

use the features on the TV that they then own without agreeing to deceptive and unconscionable policies that LG relies on when it accesses and collects consumer data.

235. LG has no respect for consumers' autonomy nor the fact that they are the owners of their LG Smart TVs.

236. Indeed, Serge Matta, LG Ad Solution's Global Advertising President has stated, "We have the glass, we own the glass, we own the TV."

237. Similarly, Justin Fromm, LG Ad Solution's head of research said, "Because we own the glass . . . and we have first party ACR data . . . we understand everything that hits the screen."

238. Apparently paying the purchase price for the Smart TV is not enough to buy it from LG, but LG's Account Holders are not informed that LG asserts a property interest in a spy device in their homes.

239. LG acts as a modern-day oil tycoon that has employed deceptive and unfair business practices in order to bypass the consumer and access, collect, and sell their data without their knowledge or informed consent.

240. Hightouch is no better than the other Defendants. Hightouch uses its repository of consumer data to operate its software and make its business possible. As described above, without that repository Hightouch's software would likely be worthless to large corporations like LG and LG Ad Solutions.

## Plaintiff Specific Allegations

**Emma deSambourg (Account Holder Class)**

241. Plaintiff Emma deSambourg is a Missouri resident and was a Missouri resident at all times relevant herein.

Electronically Filed - St Louis County - October 06, 2026 - 04:21 PM

242. Emma purchased an OLED C2 Series model LG Smart TV on October 11, 2023.

243. Emma set up her LG Smart TV and is the account holder associated with the Smart TV

244. Emma purchased the LG Smart TV primarily for personal, family, and/or household purposes.

245. Emma works as a licensed speech therapist and treats primarily juvenile patients.

246. Emma works from home and meets with her patients via telehealth appointments.

247. Emma's OLED C2 Series Smart TV came with a built-in microphone.

248. When Emma first turned on her Smart TV, they were forced to agree to all of LG's illusory Privacy and Terms of Use policies before they could truly use it.

249. At the point of purchasing the TV, Emma had no idea that she would not be able to use the Smart TV features without being forced to agree to numerous policies.

250. Emma purchased her TV because it was advertised as having Smart TV features that were readily able for use.

251. LG has modified or updated its Privacy Policy and Terms of Use at least twelve times since Emma purchased their LG Smart TV.

252. Emma has never been prompted to re-agree to the Privacy Policy.

253. Emma has been prompted at most twice to re-agree to the Terms of Use Policy. Any agreement came in the form of an update, and he was forced to agree before being able to continue to use the Smart TV.

254. Because of the deficiencies in LG's current and former policies, Emma did not have knowledge of or give informed consent to LG's data collection, voice data collection, secondary device data collection, network sweeping, and/or LG's other unlawful data collection

Electronically Filed - St Louis County - October 06, 2026 - 04:21 PM

and sale practices.

255. Emma was not put on notice of LG Smart TV's security deficiencies by privacy policies, terms of use, advertisements, product packaging, and other materials associated with the purchase of the Smart TVs.

256. Emma was not put on notice that the Smart TV mines and sells data from not only the Smart TVs, but from any device physically connected to the TVs or on the same network as the Smart TVs by privacy policies, terms of use, advertisements, product packaging, and other materials associated with the purchase of the Smart TVs.

257. Emma did not turn on the built-in microphone on or perform any microphone set up at any point after purchasing their LG Smart TV.

258. After some time, Emma began to notice that the TV would randomly turn on and start picking up her voice while she was on telehealth meetings with her clients.

259. Fearful that the Smart TV was listening to and recording her provider-patient privileged telehealth appointments, Emma turned off the microphone.

260. Despite having never set up the microphone, it was listening to, collecting, and transmitting her voice data to LG.

261. Shortly after turning off the microphone, Emma decided to completely disconnect her LG Smart TV from the internet, effectively rendering the Smart TV features unavailable.

262. Emma was fearful that the TV was collecting her sensitive and private data and information.

263. Emma then purchased an Apple TV set which they connected to their LG Smart TV.

264. Emma would not have disconnected the LG Smart TV had they not been

Electronically Filed - St Louis County - October 06, 2026 - 04:21 PM

subjected to unlawful data and voice collection processes.

265. Emma would not have purchased an Apple TV set had they not been subjected to unlawful data and voice collection processes.

266. Emma acted as a reasonable consumer when they purchased their LG Smart TV.

267. Emma was not made aware by the materials, advertisements, and policies associated with the purchase of the Smart TV that it suffered from security flaws, that it would unlawfully collect their data and voice data, that they would have to accept policies before using the Smart TV features, or that its features did not comply with Federal Trade Commission Regulations.

268. Emma was not made aware of the above-described material facts by any other notification, policy, or material presented to them by LG.

269. Had Emma been made aware of the above-described material facts, she would not have purchased the exorbitantly priced LG OLED C2 Series Smart TV.

270. Emma has lost all benefit of their purchase because they are no longer able to use the Smart TV features that LG marketed the TV as having.

271. Emma has never formed an agreement with Hightouch.

272. Emma would not have agreed to Hightouch's data collection and integration practices had she been presented with an option.

273. Emma did not have knowledge of or give consent to Hightouch's data collection and storage practices.

274. Had Emma been aware of Hightouch's integration with LG Smart TVs she would not have purchased or continued using the Smart TV she had purchased.

**Andrew Banning (Household Member Class)**

Electronically Filed - St Louis County - October 06, 2026 - 04:21 PM

275. Plaintiff Andrew Banning is Plaintiff Emma deSambourg's fiancé and lives in the same home as Plaintiff Emma deSambourg.

276. Andrew is a Missouri resident and was a Missouri resident at all times relevant herein.

277. Andrew has permanently resided in the same household as deSambourg since she purchased the Smart TV and since it has been in use.

278. Andrew works as a cybersecurity expert.

279. Andrew works both at home and at the office.

280. Andrews work involves sensitive information.

281. Andrew does not hold an LG Smart TV account.

282. Andrew has never been presented with an agreement from LG or LG Ad Solutions.

283. Andrew has never formed an agreement with LG or LG Ad Solutions.

284. Andrew has never been presented with an agreement from Hightouch.

285. Andrew has never formed an agreement with Hightouch.

286. Had Andrew been presented with an agreement from Defendants, he would not have agreed.

287. Andrew has never otherwise granted consent to Defendants data collection practices.

288. Andrew has had his data mined, collected, and sold to third parties by Defendants without his knowledge or informed consent by using the LG Smart TV, using other devices in the vicinity of the LG Smart TV, and having conversations within the microphone range of the LG Smart TV.

Electronically Filed - St Louis County - October 06, 2026 - 04:21 PM

289. Like Emma, Andrew began to notice that the microphone in her TV was picking up her voice despite never having set the microphone up or consenting to its use.

290. Andrew advised Emma that it may be listening to their conversations whether those be personal or for work and that they should turn it off.

291. Andrew contributed to the purchase of the Apple TV after he and Emma decided that they should disconnect the LG Smart TV from the internet.

292. They would not have purchased the Apple TV if LG, LG Ad Solutions, and Hightouch were not collecting and selling their sensitive and private data without their information.

**George Solomon (Account Holder Class)**

293. Plaintiff George Solomon is a Missouri resident and was a Missouri resident at all times relevant herein.

294. Plaintiff George Solomon purchased a Smart LED TV model LG Smart TV in 2015.

295. George set up his LG Smart TV and is the account holder associated with the TV.

296. George purchased the Smart TV primarily for personal, family, and/or household purposes.

297. George's Smart TV came with an LG Magic Remote equipped with a microphone.

298. When George first turned on his Smart TV, they were forced to agree to all of LG's illusory privacy and terms of use policies before they could truly use it despite understanding at the point of purchase that the Smart TV would be ready for use as a Smart TV without the need for further agreements.

Electronically Filed - St Louis County - October 06, 2026 - 04:21 PM

299. LG has modified or updated its Privacy Policy and Terms of Use in excess of twenty times since George purchased their LG Smart TV.

300. George has never been prompted to agree to a modification or update of the Privacy Policy or Terms of Use despite owning their LG Smart TV for over ten years.

301. At the point of purchasing the TV, George had no idea that he would not be able to use the Smart TV features without being forced to agree to numerous policies.

302. George purchased his TV because it was advertised as having Smart TV features that were readily able for use.

303. Because of the deficiencies in LG's current and former policies, George did not have knowledge of or give informed consent to LG's data collection, secondary device data collection, network sweeping, and/or LG's other unlawful data collection and sale practices.

304. George was not put on notice of LG Smart TV's security deficiencies by privacy policies, terms of use, advertisements, product packaging, and other materials associated with the purchase of the Smart TVs.

305. George was not put on notice that the Smart TV mines and sells data from not only the Smart TVs, but from any device physically connected to the TVs or on the same network as the Smart TVs by privacy policies, terms of use, advertisements, product packaging, and other materials associated with the purchase of the Smart TVs.

306. George acted as a reasonable consumer when they purchased their LG Smart TV.

307. George was not made aware by the materials, advertisements, and policies associated with the purchase of the Smart TV that it suffered from security flaws, that it would unlawfully collect his data and voice data, that they would have to accept policies before using the Smart TV features, or that its features did not comply with Federal Trade Commission

Electronically Filed - St Louis County - October 06, 2026 - 04:21 PM

Regulations.

308. George was not made aware of the above-described material facts by any other notification, policy, or material presented to them by LG.

309. Had George been made aware of the above-described material facts, he would not have purchased the exorbitantly priced LG Smart TV.

310. George has never formed an agreement with Hightouch.

311. George would not have agreed to Hightouch's data collection practices if they had been presented with an option.

312. George did not have knowledge of or give consent to Hightouch's data collection and storage practices.

313. Had George been aware of Hightouch's integration with LG Smart TVs he would not have purchased or continued using his own.

**Deborah Solomon (Household Member Class)**

314. Plaintiff Deborah Solomon is Plaintiff George Solomon's fiancé.

315. Deborah is a Missouri resident and was a Missouri resident at all times relevant herein.

316. Deborah has resided in the same household as George since he purchased the Smart TV and since it has been in use.

317. Deborah does not hold an LG Smart TV account.

318. Deborah has never been presented with an agreement from LG or LG Ad Solutions.

319. Deborah has never formed an agreement with LG or LG Ad Solutions.

320. Deborah has never been presented with an agreement from Hightouch.

Electronically Filed - St Louis County - October 06, 2026 - 04:21 PM

321. Deborah has never formed an agreement with Hightouch.

322. Had Deborah been presented with an agreement from Defendants, she would not have agreed.

323. Deborah has never otherwise granted consent to Defendants data collection practices.

324. Deborah has had her data mined, collected, and sold to third parties by Defendants without her knowledge or informed consent.

**Brad Young (Account Holder Class)**

325. Plaintiff Brad Young has purchased eight UHD model LG Smart TVs in the past four years.

326. Brad purchased these Smart TVs primarily for personal, family, and/or household purposes.

327. Brad set up his LG Smart TVs and is the account holder associated with the TVs.

328. When Brad purchased his first Smart TV, he downloaded LG's ThinQ app on his phone.

329. The ThinQ app allows a Smart TV user to "swap [their] remote control for the LG ThinQ app. In a single Magic Tap, [they] can mirror, cast, and sound share from [their] TV to [their] phone and vice versa. [77]

330. The app can also be used in setting up the TV. When Brad turned on the Smart TVs he purchased for the first time, he could either go through the above-described policy acceptance procedure or scan a QR code and set up the TV through the app.

331. Brad downloaded the ThinQ app and scanned the code. All six of the policies

[77] LG Electronics India, *LG ThinQ: Control Your Home from One App*, https://www.lg.com/in/support/lg-thinq/app/ (last visited Sept. 24, 2026).

Electronically Filed - St Louis County - October 06, 2026 - 04:21 PM

came up at once and in order to move on and use the TV that he now owned, he had to accept each and every one.

332. LG has changed its privacy policy at least eight times since Brad purchased his first LG Smart TV. Despite having the ThinQ app and eight LG Smart TVs, Brad has only been asked to agree to a policy update one time.

333. After purchasing the first LG Smart TV, Brad had no idea that he would not be able to use the Smart TV features without being forced to agree to numerous policies.

334. Brad purchased his TVs because they were advertised as having Smart TV features that were readily able for use.

335. Because of the deficiencies in LG's current and former policies, Brad did not have knowledge of or give informed consent to LG's data collection, secondary device data collection, network sweeping, and/or LG's other unlawful data collection and sale practices.

336. Brad was not put on notice of LG Smart TV's security deficiencies by privacy policies, terms of use, advertisements, product packaging, and other materials associated with the purchase of the Smart TVs.

337. Brad was not put on notice that the Smart TV mines and sells data from not only the Smart TVs, but from any device physically connected to the TVs or on the same network as the Smart TVs by privacy policies, terms of use, advertisements, product packaging, and other materials associated with the purchase of the Smart TVs.

338. Brad acted as a reasonable consumer when he purchased his LG Smart TV.

339. Brad has six children living in his home between the ages of three and sixteen years old. Brad was not made aware that the LG Smart TVs would be collecting sensitive and private data about his children, including personal identifying data discussed below and

Electronically Filed - St Louis County - October 06, 2026 - 04:21 PM

eavesdropping on his children's conversations.

340. Brad was not made aware by the materials, advertisements, and policies associated with the purchase of the Smart TV that it suffered from security flaws, that it would unlawfully collect his data and voice data, that they would have to accept policies before using the Smart TV features, or that its features did not comply with Federal Trade Commission Regulations.

341. Brad was not made aware of the above-described material facts by any other notification, policy, or material presented to them by LG.

342. Had Brad been made aware of the above-described material facts, he would not have purchased the exorbitantly priced LG Smart TV.

343. Brad has never formed an agreement with Hightouch.

344. Brad would not have agreed to Hightouch's data collection practices if he had been presented with an option.

345. Brad did not have knowledge of or give consent to Hightouch's data collection and storage practices.

346. Had Brad been aware of Hightouch's integration with LG Smart TVs he would not have purchased or continued using his own LG Smart TV.

**Jessica Young (Household Member Class)**

347. Plaintiff Jessica Young is Plaintiff Brad Young's wife.

348. Jessica is a Missouri resident and was a Missouri resident at all times relevant herein.

349. Jessica has resided in the same household as Brad since he purchased the Smart TV and since it has been in use.

Electronically Filed - St Louis County - October 06, 2026 - 04:21 PM

350. Jessica does not hold an LG Smart TV account.

351. Jessica has never been presented with an agreement from LG or LG Ad Solutions.

352. Jessica has never formed an agreement with LG or LG Ad Solutions.

353. Jessica has never been presented with an agreement from Hightouch.

354. Jessica has never formed an agreement with Hightouch.

355. Had Jessica been presented with an agreement from Defendants, she would not have agreed.

356. Jessica has never otherwise granted consent to Defendants' data collection practices.

357. Jessica has had her data mined, collected, and sold to third parties by Defendants without her knowledge or informed consent as discussed below.

## **Tolling**

358. All applicable statute(s) of limitations have been tolled by Defendants' knowing and active concealment and denial of the facts alleged herein. Plaintiffs and the Class members' causes of action could not have accrued and did not accrue until shortly before the filing of this action, because Plaintiffs and the Class members could not have reasonably discovered Defendants' practice of covertly collecting, recording, using, sharing, selling, and profiting of their private and sensitive sound and data until shortly before this Class Action began. Given Defendants' surreptitious collection of data and sound without providing adequate notice or obtaining informed consent, Defendants should be equitably estopped from asserting any statute of limitations defense, as consumers did not know, and would have no reason to know, that they were impacted by Defendants' unlawful practices.

## **Class Allegations**

Electronically Filed - St Louis County - October 06, 2026 - 04:21 PM

359. Plaintiffs bring this action individually and for a class of consumers designated under Rule 52.08(a) and 52.08(b)(3) to remedy the ongoing invasions of privacy, unfair, unlawful, or deceptive business practices alleged, and seeks redress for all those persons harmed.

360. Plaintiffs seek certification of two classes in this action. When, in this petition, Plaintiffs refer to the "Class", "the Class members" or "all Class members" they are referring to both the AH Class and the HM Class defined below unless otherwise stated.

361. The Account Holder Class comprises all persons (the "AH Class"):

a. Who are residents of the State of Missouri; and

b. Who set up an LG Smart TV account and are the account holders of such LG Smart TV account for the LG Smart TV device in their homes; and

c. Who have had an LG Smart TV in their household within the past five (5) years that they purchased and/or leased; or

362. The Household Member Class comprises all persons (the "HM Class"):

a. Who are residents of the State of Missouri; and

b. Who have permanently resided in a household with an LG Smart TV therein within the past five (5) years; and

c. Who are not members of the Account Holder Class.

363. Plaintiffs reserve the right to redefine the Classes and/or add Subclasses at, or prior to, the class certification stage, in response to discovery or pursuant to instruction by the Court.

364. Plaintiffs George Solomon, Emma deSambourg, Brad Young, and each AH Class member purchased and/or leased an LG Smart TV.

365. Plaintiffs and each AH Class member bought their LG Smart TV for use primarily

Electronically Filed - St Louis County - October 06, 2026 - 04:21 PM

for personal, family, or household purposes and set up an account through their LG Smart TV to activate Smart TV features.

366. AH Class members who have purchased an LG Smart TV have had their data and lives mined and recorded without their knowledge or informed consent.

367. HM Class members who resided in a household with an LG Smart TV have had their data and lives mined and recorded without their knowledge or consent.

368. Plaintiffs and the AH Class and HM Class members  were not informed or were not reasonably informed about the data and sound collection and recording that their LG Smart TVs located in their homes would perform.

369. LG's consistent invasion of privacy without consumers knowledge or informed consent is part of a pattern, or consistent with a practice, of noncompliance with Missouri law.

370. Plaintiffs brings this class suit against LG, LG Ad Solutions, and Hightouch seeking relief to redress an unlawful and deceptive pattern of wrongdoing regarding collection, storage, and sale of consumers data and sound without their knowledge or informed consent.

371. Defendants' conduct violates the law.

372. LG has maintained a practice and policy of mining, collecting, storing, selling, and profiting off consumers sensitive data and sound without their knowledge or informed consent, thus constituting invasions of privacy.

373. LG Ad Solutions has maintained a practice and policy of mining, collecting, storing, selling, and profiting off consumers' sensitive data and sound without their knowledge or informed consent, thus constituting invasions of privacy.

374. Hightouch has maintained a practice and policy of mining, collecting, storing, selling, and profiting off consumers' sensitive data and sound without their knowledge or

Electronically Filed - St Louis County - October 06, 2026 - 04:21 PM

informed consent, thus constituting invasions of privacy.

375. Defendants' unlawful conduct has caused injury to Plaintiffs and the AH and HM Class members.

376. Plaintiffs, AH and the Class members, and the HM Class members suffered ascertainable loss in the purchase price of the television as well as at minimum, the following damages:

a. Sensitive and confidential information that Plaintiffs, the AH and the HM Class Members intended to remain private is no longer private;

b. Defendant eroded the essential confidential nature of the physician-patient and provider-patient relationship;

c. Defendant eroded the essential confidential nature of the psycho-therapist and provider-patient relationship;

d. Defendant eroded the essential confidential nature of the attorney-client relationship;

e. Defendants accessed and sold Plaintiffs', the AH Class members', and HM Class members' sensitive financial information;

f. Defendants took something of value from Plaintiffs', the AH Class members', the HM Class members' and derived benefit therefrom without their knowledge, consent, or authorization and without sharing the benefit of such value;

g. Defendant's actions diminished the value of Plaintiffs', the AH Class Members', HM Class members', personal information; and

h. Defendant's actions eroded the sanctity and privacy of Plaintiffs and the Class members households.

Electronically Filed - St Louis County - October 06, 2026 - 04:21 PM

377. Members of the classes are so numerous their individual joinder is impracticable.

378. There are questions of law and fact common to the classes, which predominate over any issues involving individual AH and HM Class members—namely, whether LG, LG Ad Solutions, and Hightouch violated Missouri law in relation to collecting and selling consumer data. The principal legal question common to Plaintiffs and each AH and HM Class member is whether this conduct complied with Missouri statutory and common law.

379. Defendants engaged in a common course of conduct giving rise to the legal rights sought to be enforced by Plaintiffs individually and on behalf of the AH and HM Class members. Identical statutory and common law violations, business practices, and injuries are involved. Individual questions, if any, pale in comparison, in both quantity and quality, to the numerous common questions that dominate this action.

380. LG sold the same or substantially the same LG Smart TVs with the same unlawful data collection features to Account Holder Plaintiffs and the AH Class members, or those residing with HM Plaintiffs and the HM Class members.

381. Plaintiffs' claims are typical of the claims of the Class members. Plaintiffs' and the Class claims are based on the same factual and legal theories. Plaintiffs' and the Class's rights derive from the Missouri common law and from RS Mo § 407.020, RS Mo §§ 569.095 & 537.525, and RS Mo § 542.402.

382. Plaintiffs and each Class member were damaged and may recover actual damages not less than the minimum damages provided by RS Mo § 407.020, RS Mo §§ 569.095 & 537.525, and RS Mo § 542.402.

383. Plaintiffs will fairly and adequately represent and protect the interests of the AH Class and HM Class.

Electronically Filed - St Louis County - October 06, 2026 - 04:21 PM

384. Plaintiffs have no interests antagonistic to the AH and HM Class members.

385. Plaintiffs' counsel is competent and experienced in consumer and class litigation.

386. Plaintiffs and all Class members have an interest in determining the illegality of LG's data and sound mining activity and in recovering damages due to that activity.

387. The questions of law or fact common to the Class predominate over questions affecting only individual members.

388. Determining the illegality of Defendants' data mining activity resolves all Class members' claims because each Smart TV purchased by or present in the Class members' homes performs the same or substantially similar functions.

389. A class action is superior to other available methods for the fair and efficient adjudication of this controversy.

390. Most Class members are probably unaware their rights were violated and that they have claims against LG, LG Ad Solutions, and Hightouch.

391. Although all Class members have claims against the Defendants, the likelihood that individual Class members will prosecute separate actions is remote due to the time and expense necessary to conduct such litigation.

392. If each of the Class members was forced to bring an individualized suit, such suits would burden judicial resources and would create the risk of multiple inconsistent results for similarly situated parties.

393. Concentrating the litigation of Plaintiffs and the Class members' claims is also desirable and logical given the predominance of common questions of law and fact alleged above.

394. The Class should be certified under Rule 52.08(b)(3), as the superior method for

Electronically Filed - St Louis County - October 06, 2026 - 04:21 PM

the fair and efficient adjudication of this controversy.

395. Plaintiffs anticipate no unusual difficulties in the management of this litigation as a class action.

396. Plaintiffs seek a declaration that Defendants' activities violate Missouri law.

## Legal Claims for Relief Against Individual Defendants

### COUNT I
### AH Class Members
### Defendant LG
### Unlawful, Unfair, and Deceptive Practices in Violation of RS Mo § 407.020

397. Plaintiffs incorporate the general factual allegations as if set forth fully herein.

398. Plaintiffs bring this claim on behalf of themselves and the AH Class.

399. Plaintiffs and the AH Class members purchased LG Smart TV's that were the same or substantially similar.

400. LG Smart TVs constitute merchandise under the Missouri Merchandising Practices Act.

401. LG Smart TVs are intended to for direct use by consumers.

402. Plaintiffs and the AH Class members purchased and/or leased LG Smart TV's primarily for personal, family, or household purposes.

403. Defendant LG employed deceptive and unfair business practices by concealing, suppressing, and/or omitting from privacy policies, terms of use, advertisements, product packaging, and other materials associated with the purchase of the Smart TVs that the TV mines and sells data from not only the Smart TVs, but from any device physically connected to the TVs or on the same network as the Smart TVs.

404. Defendant LG employed deceptive and unfair business practices by concealing, suppressing, and/or omitting from privacy policies, terms of use, advertisements, product

Electronically Filed - St Louis County - October 06, 2026 - 04:21 PM

packaging, and other materials associated with the purchase of the Smart TVs that the TV listens to sounds within its vicinity and records, transcribes, stores, and sells the data it collects from listening.

405. Defendant LG employed deceptive and unfair business practices by concealing, suppressing, and/or omitting from privacy policies, terms of use, advertisements, product packaging, and other materials associated with the purchase of the Smart TVs that the TV has significant security vulnerabilities that subject it to easy attack and control by hackers and that LG does not take action to remedy these vulnerabilities after discovery.

406. Defendant LG employed deceptive and unfair business practices by concealing, suppressing, and/or omitting from privacy policies, terms of use, advertisements, product packaging, and other materials associated with the purchase of the Smart TVs that in order to use the Smart TV functions which LG advertises as being readily available the consumer must accept a set of policies that LG believes entitle it to collect and sell private and sensitive consumer data.

407. The fact that the Smart TVs mine data from physically connected and not physically connected devices and sell the data is material.

408. The fact that the Smart TVs listen, record, transcribe, store, and sell data based on sound collection is material.

409. The fact that the Smart TVs suffer from critical security defects allowing hackers to easily access the data stored by the TV and remotely control the built-in microphone is material.

410. The fact that a consumer must accept the policies as a prerequisite to using the Smart TV functions that LG advertises as being readily available is material.

411. Plaintiffs and the AH Class members acted as reasonable consumers when they

Electronically Filed - St Louis County - October 06, 2026 - 04:21 PM

purchased LG Smart TVs because no reasonable consumer would, based on the deceptive acts and omissions of Defendant LG, have notice and/or knowledge that the Smart TV would mine, store, and sell data and sound not only from the TV but from any devices connected to the TV, on the same network as the TV, or sounds in the vicinity of the TV.

412. Plaintiffs and the AH Class members acted as reasonable consumers when they purchased LG Smart TVs because no reasonable consumer would, based on the deceptive acts and omissions of Defendant LG, have notice and/or knowledge that the Smart TV would suffer from critical security deficiencies that would allow a hacker to easily take remote control of the built-in microphone and access the data collected and stored by LG.

413. An unfair practice is any practice which either: (1) Offends any public policy as it has been established by the Constitution, statutes, or common law of Missouri, or by the Federal Trade Commission or its interpretive decisions; or (2) is unethical, oppressive, or unscrupulous; and (3) presents a risk of, or causes, substantial injury to consumers. [78]

414. Defendant's practices are unfair because they offend public policy as established by Missouri law and/or Federal Trade Commission interpretive decisions of federal statutes as they relate to the privacy of minor children.

415. Defendant collects this information using the myriad of computer and telecommunications facilities, including equipment and operating software, which comprise the interconnected world-wide network of networks that employ the Transmission Control Protocol/Internet Protocol, or any predecessor or successor protocols to such protocol, to communicate information of all kinds by wire, radio, or other methods of transmission.

416. Defendant released this personal information by sharing, selling, and/or otherwise

[78] 15 CSR 60-8.020(1)-(2).

Electronically Filed - St Louis County - October 06, 2026 - 04:21 PM

transferring it to third parties.

417. Defendant did not provide notice on its website or online service of what information it collects from children, how it uses such information, and its disclosure practices for such information, which would have impacted Plaintiffs and the Class members' decision to purchase the LG merchandise.

418. Defendant did not obtain parental consent prior to any collection, use, and/or disclosure of personal information from children.

419. Defendant did not provide a reasonable means for a parent to review the personal information collected from a child and refuse to permit its further use or maintenance.

420. Defendant did not establish and maintained reasonable procedures to protect the confidentiality, security, and integrity of personal information collected from children. Rather, it established and maintained procedures which were calculated to indiscriminately collect and use personal information from all persons within a household. The AH Class members would not have purchased the LG Smart TV had LG disclosed that their children's data would be harvested

421. Plaintiffs and the AH Class members suffered ascertainable loss in the purchase price of the television as well as at minimum, the following damages:

a. Sensitive and confidential information that Plaintiffs and AH Class Members intended to remain private is no longer private;

b. Defendant LG eroded the essential confidential nature of the physician-patient and provider-patient relationship;

c. Defendant LG eroded the essential confidential nature of the psycho-therapist and provider-patient relationship;

d. Defendant LG eroded the essential confidential nature of the attorney-client

Electronically Filed - St Louis County - October 06, 2026 - 04:21 PM

relationship;

e. Defendant LG accessed and sold Plaintiffs and the AH Class members sensitive financial information;

f. Defendant LG took something of value from Plaintiffs and AH Class Members and derived benefit therefrom without Plaintiffs and AH Class Members' knowledge, consent, or authorization and without sharing the benefit of such value;

g. Defendant LG's actions diminished the value of Plaintiffs and AH Class Members' personal information; and

h. Defendant LG's actions eroded the sanctity and privacy of Plaintiffs and the AH Class members households.

422. Plaintiffs and the AH Class members have suffered harm and injury, including, but not limited to, the invasion of their privacy rights.

423. Plaintiffs and the AH Class members have been damaged as a direct and proximate result of Defendant LG's deceptive, unfair, and unlawful practices and are entitled to seek just compensation including monetary damages.

WHEREFORE Plaintiffs and the AH Class members seek appropriate relief for their injuries, including, but not limited to, actual damages in the purchase price of the television and other relief that will reasonably compensate Plaintiffs and the AH Class members for the harm to their privacy interests as well as a disgorgement of profits made by Defendant LG as a result of its intrusions on Plaintiffs and the AH Class members privacy. Plaintiffs and the AH Class members are entitled to an award of attorney's fees if they are the prevailing party pursuant to RS Mo 407.025.2(2). Plaintiffs and the AH Class members also seek such other relief as the

Electronically Filed - St Louis County - October 06, 2026 - 04:21 PM

Court may deem equitable, legal, and proper.

**COUNT II**
**All Class Members**
**Defendants LG and LG Ad Solutions**
**Invasion of Privacy -- Tortious Intrusion on Seclusion**

424. Plaintiffs incorporate the general factual allegations as if set forth fully herein.

425. Plaintiffs bring this claim on behalf of themselves and all Class members.

426. Missouri established a right to privacy in Article I, Section 15 of the Missouri Constitution.

427. Plaintiffs and all Class members purchased and/or leased LG Smart TVs, and/or resided in households with LG Smart TVs

428. Plaintiffs and all Class members purchased LG Smart TVs, or resided in household that contained LG Smart TVs which were used, primarily for personal, family, or household purposes or resided in households containing LG Smart TVs which were used for that purpose.

429. Defendants intentionally intruded on the solitude, seclusion, and/or private affairs of Plaintiffs and all Class members by collecting data from devices physically connected to LG Smart TVs and selling that data without the knowledge or informed consent of Plaintiffs and all Class members.

430. Defendants intentionally intruded on the solitude, seclusion, and/or private affairs of Plaintiffs and all Class members by collecting data from the LG Smart TV selling that data without the knowledge or informed consent of Plaintiffs and all Class members.

431. Defendants intentionally intruded on the solitude, seclusion, and/or private affairs of Plaintiffs and all Class members by collecting data from devices physically connected to LG Smart TVs and selling that data without the knowledge or informed consent of Plaintiffs and all

Electronically Filed - St Louis County - October 06, 2026 - 04:21 PM

Class members.

432. Defendants intentionally intruded on the private affairs of Plaintiffs and all Class members by collecting data from devices on the same network or on nearby networks as the LG Smart TVs and selling that data without Plaintiffs and the Class members knowledge or informed consent.

433. Defendants intentionally intruded on the private affairs of Plaintiffs and all Class members by listening to and recording sounds within the vicinity of the LG Smart TVs and recording, transcribing, storing, and selling that data without Plaintiffs and all Class members knowledge or informed consent.

434. The data and sounds mined and collected from Plaintiffs and all Class members contained data that was secret and private.

435. The data and sounds mined and collected from Plaintiffs and all Class members includes, but is not limited to, private health information, sensitive financial data, sensitive market data, attorney-client privileged information, physician-patient privileged communications, psychotherapist privileged communications, attorney-client privileged information, and other sensitive and private information.

436. Plaintiffs and all Class members had a legitimate and reasonable expectation of privacy with respect to the above-described data and were accordingly entitled to protection of this information against the acquisition and disclosure of that data by unreasonable means.

437. Plaintiffs and all Class members had the right to keep this information secret and private.

438. Defendants obtained this secret and private information unreasonably by employing unfair and deceptive business practices in the form of suppressing, concealing, or

Electronically Filed - St Louis County - October 06, 2026 - 04:21 PM

omitting material facts from privacy policies, terms of use, advertisements, product packaging, and/or other material connected with the purchase, lease, and use of the LG Smart TVs.

439. By employing these unfair and deceptive practices, Defendants engaged in a pattern of conduct aimed at ensuring that Plaintiffs and all Class members could not obtain knowledge about its collection and sale of their data and sounds.

440. By employing these unfair and deceptive practices, Defendants engaged in a pattern of conduct aimed at ensuring that Plaintiffs and all Class members could not give informed consent to the collection and sale of their data and sounds.

441. Defendants' unauthorized acquisition, appropriation, and disclosure of Plaintiffs and all Class members private data is unreasonable and highly offensive to reasonable persons.

442. Defendants acted with a knowing mind when they intentionally violated Plaintiffs and all Class members' privacy by collecting and selling their private data.

443. Acting with knowledge, Defendants had notice and knew that its disclosure of Plaintiffs and all Class members' data to third parties would cause injury.

444. As a direct and proximate result of Defendants' acts and/or omissions, Plaintiffs and all Class members private data was collected and sold to third parties without their authorization.

445. Defendants' breach caused Plaintiffs and all Class Members, at minimum, the following damages:

a. Sensitive and confidential information that Plaintiffs and Class Members intended to remain private is no longer private;

b. Defendants eroded the essential confidential nature of the physician-patient and provider-patient relationship;

Electronically Filed - St Louis County - October 06, 2026 - 04:21 PM

c. Defendants eroded the essential confidential nature of the psycho-therapist and provider-patient relationship;

d. Defendants eroded the essential confidential nature of the attorney-client relationship;

e. Defendants accessed and sold Plaintiffs and all Class members sensitive financial information;

f. Defendants took something of value from Plaintiffs and all Class Members and derived benefit therefrom without Plaintiffs' and Class Members' knowledge, consent, or authorization and without sharing the benefit of such value;

g. Defendants' actions diminished the value of Plaintiffs' and Class Members' personal information; and

h. Defendants' actions eroded the sanctity and privacy of Plaintiffs and the Class members households.

446. Plaintiffs and the Class members have suffered harm and injury, including, but not limited to, the invasion of their privacy rights.

447. Plaintiffs and the Class members have been damaged as a direct and proximate result of Defendants' invasion of their privacy and are entitled to seek just compensation including monetary damages.

WHEREFORE Plaintiffs and all Class members seek appropriate relief for their injuries, including, but not limited to, damages that will reasonably compensate Plaintiffs and all Class members for the harm to their privacy interests as well as a disgorgement of profits made by Defendants as a result of its intrusions on Plaintiffs' and all Class members' privacy. Plaintiffs and all Class members also seek such other relief as the Court may deem equitable, legal, and

Electronically Filed - St Louis County - October 06, 2026 - 04:21 PM

proper.

**COUNT III**
**All Class Members**
**Defendants LG and LG Ad Solutions**
**Invasion of Privacy -- Public Disclosure of Private Facts**

448. Plaintiffs incorporate the general factual allegations as if set forth fully herein.

449. Plaintiffs bring this claim on behalf of themselves and all members of the Class.

450. Plaintiffs and all Class members purchased and/or leased LG Smart TVs, and/or resided in households with LG Smart TVs.

451. Plaintiffs and all Class members purchased LG Smart TVs primarily for personal, family, or household purposes, and/or resided in homes where LG Smart TVs were primarily used for that purpose.

452. Defendants mined, collected, and sold data from devices physically connected to the LG Smart TVs without Plaintiffs and the Class members knowledge or informed consent.

453. Defendants mined, collected, and sold data from devices belonging to and use by Plaintiffs and Class members which were not physically connected to the LG Smart TVs but on the same as or nearby networks to the LG Smart TVs

454. Defendants listened, recorded, transcribed, stored, and sold sounds made by Plaintiffs and the Class members within the vicinity of the LG Smart TVs without Plaintiffs or the Class members knowledge or informed consent.

455. Defendants sold and/or shared and thereby publicized the data it collected from Plaintiffs and the Class members to a large number of persons and entities, including without limitation the employees of Defendants as well as the employees of the third party companies.

456. Plaintiffs and all Class members did not have knowledge that this collection and sale was occurring, nor did they give informed consent to its occurrence.

Electronically Filed - St Louis County - October 06, 2026 - 04:21 PM

457. Defendants are not entitled to any privilege which would allow it to collect and sell this data without Plaintiffs, and all Class members informed consent.

458. The data and sounds that Defendants collected and sold were private, secret, and sensitive.

459. The data and sounds mined and collected from Plaintiffs and all Class members includes, but not limited to, private health information, sensitive financial data, sensitive market data, attorney-client privileged information, physician-patient privileged communications, psychotherapist privileged communications, attorney-client privileged information, and other sensitive and private information, including personal identifiers such as sexual preference, religion, race, ethnicity, and/or gender identity.

460. This secret, private, and sensitive data is not of any legitimate concern to the public or the large number of persons and entities that Defendants sold and disclosed this data to.

461. Plaintiffs and the Class members were brought shame, humiliation, and embarrassment by the disclosure of their private, secret, and sensitive data.

462. Plaintiffs and all Class members suffered damages in the form of humiliation, embarrassment, the sale of their valuable data without their consent, and other damages as discovery will reveal.

463. Plaintiffs and all Class members have suffered harm and injury, including, but not limited to, the invasion of their privacy rights.

464. Defendants' breach caused Plaintiffs and all Class Members, at minimum, the following damages:

a. Sensitive and confidential information that Plaintiffs and Class Members intended to remain private is no longer private;

Electronically Filed - St Louis County - October 06, 2026 - 04:21 PM

b. Defendants eroded the essential confidential nature of the physician-patient and provider-patient relationship;

c. Defendants eroded the essential confidential nature of the psycho-therapist and provider-patient relationship;

d. Defendants eroded the essential confidential nature of the attorney-client relationship;

e. Defendants accessed and sold Plaintiffs and all Class members sensitive financial information;

f. Defendants took something of value from Plaintiffs and all Class Members and derived benefit therefrom without Plaintiffs and Class Members' knowledge, consent, or authorization and without sharing the benefit of such value;

g. Defendants' actions diminished the value of Plaintiffs and Class Members' personal information; and

h. Defendants' actions eroded the sanctity and privacy of Plaintiffs and all Class members households.

465. Plaintiffs and all Class members have been damaged as a direct and proximate result of Defendants' invasion of their privacy and are entitled to seek just compensation including monetary damages.

WHEREFORE Plaintiffs and all Class members seek appropriate relief for their injuries, including, but not limited to, damages that will reasonably compensate Plaintiffs and all Class members for the harm to their privacy interests as well as a disgorgement of profits made by Defendants as a result of its intrusions on Plaintiffs and all Class members privacy. Plaintiffs and all Class members also seek such other relief as the Court may deem equitable, legal, and proper.

Electronically Filed - St Louis County - October 06, 2026 - 04:21 PM

**COUNT IV**
**All Class Members**
**Defendants LG and LG Ad Solutions**
**Tampering with Computer Data in Violation of RS Mo §§ 569.095 & 537.525**

466. Plaintiffs incorporate the general factual allegations as if set forth fully herein.

467. Plaintiffs bring this claim on behalf of themselves and all Class members.

468. Plaintiffs and all Class members purchased and/or leased LG Smart TVs, and/or resided in households with LG Smart TVs.

469. Plaintiffs and the Class members purchased LG Smart TVs primarily for personal, family, or household purposes, or resided in a household where LG Smart TVs were used for such purposes.

470. Defendants mined, collected, and sold data from devices physically connected to the LG Smart TVs without Plaintiffs and all Class members' knowledge, informed consent, or authorization.

471. Defendants mined, collected, and sold data from devices not physically connected to the LG Smart TVs but on the same as or nearby networks to the LG Smart TVs without Plaintiffs' and all Class members' knowledge, informed consent, or authorization.

472. Defendants listened, recorded, transcribed, stored, and sold sounds made by Plaintiffs and the Class members within the vicinity of the LG Smart TVs, that were then stored on their LG Smart TVs, without Plaintiffs' or the Class members' knowledge, informed consent, or authorization.

473. Defendants did not have reasonable grounds to believe that it had authorization to employ the above-described data collection methods.

474. Defendants accessed Plaintiffs' and all Class members' computers, computer systems, and computer networks via its LG Smart TV software intentionally with the purpose of

Electronically Filed - St Louis County - October 06, 2026 - 04:21 PM

examining information about them without Plaintiffs' and all Class members' knowledge, informed consent, or authorization.

475. Defendants accessed Plaintiffs' and all Class members' computers, computer systems, and computer networks via its LG Smart TV software intentionally. After they had access to those computers, systems, and networks, Defendants collected, recorded, transcribed, and disclosed data, documentation, passwords, identifying codes, personal identification numbers, and/or other confidential information maintained therein.

476. Defendants disclosed personally identifiable information including, but not limited to, Plaintiffs' and the Class members' IP address, geographic location, name of every Wi-Fi network in the vicinity and signal strength, channel numbers of neighboring Wi-Fi networks in range, and other devices on the network, even if not connected to the TV in any way, the internal IP address of those networks, telephone numbers, passwords, names, sensitive financial information, and more as discovery will reveal.

477. Defendants received, retained, used, and disclosed data they knew to have been obtained in violation of RS Mo 569.095.

478. This disclosure of personally identifiable information constitutes an unreasonable, substantial, and serious interference with Plaintiffs' and all Class members' legal rights.

479. Plaintiffs and the Class members did not consent to, authorize, or know of Defendants' disclosure of their personal information to Hightouch, LG, LG Ad Solutions, and other third parties as discovery will reveal, at the time it occurred.

480. Plaintiffs and the Class members never agreed that their sensitive information could be collected, used, and monetized by Defendant.

481. Defendants' disclosure of private data from over one million Missourians was

Electronically Filed - St Louis County - October 06, 2026 - 04:21 PM

highly offensive because it violated expectations of privacy that have been established by social norms and Missouri law.

482. Privacy polls and studies show that Americans believe that one of the most important privacy rights is the need for an individual's affirmative consent before it is collected, shared, or used.

483. Thus, the disclosure of this information was highly offensive to a reasonable person.

484. Plaintiffs and the Class members own their data.

485. Missouri Revised Statute Section 537.525 authorizes parties like Plaintiffs and the Class members to bring a civil action against any person who violates Section 569.095 for compensatory damages and reasonable attorney fees.

486. Defendants' violation of RS Mo 569.095 caused Plaintiffs and the Class Members, at minimum, the following damages:

a. Sensitive and confidential information that Plaintiffs and Class Members intended to remain private is no longer private;

b. Defendants eroded the essential confidential nature of the physician-patient and provider-patient relationship;

c. Defendants eroded the essential confidential nature of the psycho-therapist and provider-patient relationship;

d. Defendants eroded the essential confidential nature of the attorney-client relationship;

e. Defendants accessed and sold Plaintiffs' and the Class members' sensitive financial information;

Electronically Filed - St Louis County - October 06, 2026 - 04:21 PM

f. Defendants took something of value from Plaintiffs and Class Members and derived benefit therefrom without Plaintiffs' and Class Members' knowledge, consent, or authorization and without sharing the benefit of such value;

g. Defendants' actions diminished the value of Plaintiffs' and Class Members' personal information; and

h. Defendants' actions eroded the sanctity and privacy of Plaintiffs and all Class members households.

487. Plaintiffs and all Class members have suffered harm and injury, including, but not limited to, the invasion of their privacy rights.

488. Plaintiffs and all Class members have been damaged as a direct and proximate result of Defendants' invasion of their privacy and are entitled to seek just compensation including monetary damages.

WHEREFORE Plaintiffs and all Class members seek appropriate relief for their injuries, including, but not limited to, damages that will reasonably compensate Plaintiffs and all Class members for the harm to their privacy interests as well as a disgorgement of profits made by Defendants' as a result of its intrusions on Plaintiffs and all Class members privacy. Plaintiffs and all Class members seek reasonable attorneys fees if they are the prevailing party pursuant to 537.525. Plaintiffs and all Class members also seek such other relief as the Court may deem equitable, legal, and proper.

**COUNT V**
**All Class Members**
**Defendants LG and LG Ad Solutions**
**Interception of Wire Communications in Violation of RS Mo §§ 542.402 & 542.418**

489. Plaintiffs incorporate the general factual allegations as if set forth fully herein.

490. Plaintiffs bring this claim on behalf of themselves and all Class members.

Electronically Filed - St Louis County - October 06, 2026 - 04:21 PM

491. Defendants intercepted Plaintiffs' and the Class members' wire communications for the purpose of committing multiple tortious acts, including, but not limited to, the tortious acts described above.

492. Defendants intercepted Plaintiffs' and the Class members' wire communications for the purpose of disclosing those communications to third parties without the knowledge, consent, or written authorization of Plaintiffs or Class members. Because the disclosure of Plaintiffs' and the Class members' sensitive personal information and data without their knowledge, informed consent, or authorization, Defendants deprived Plaintiffs and the Class members of their property rights and caused Plaintiffs and the Class members injury by diminishing the value of their data, depriving them of the right to control who had access to their data, and invading their privacy.

493. Defendants' decision to steal and exploit Plaintiffs' and the Class members' data without their knowledge or informed consent is sufficient to bring Defendant's conduct within the ambit of Missouri's wiretapping statute.

494. Defendants' interception of Plaintiffs' and the Class members' wire communications for the purpose of disclosing their sensitive and private data is a tortious act constituting an invasion of privacy under Missouri law. Plaintiffs and the Class members had a reasonable expectation of privacy in their data and a legitimate right to safeguard that data. Defendants disregarded this right by collecting, storing, and selling Plaintiffs' and the Class members' data without their knowledge or informed consent. The method by which Defendants obtained Plaintiffs and the Class member's data would be highly offensive and objectionable to a reasonable person. Defendants' collection and disclosure therefore violated Plaintiffs' right to privacy.

Electronically Filed - St Louis County - October 06, 2026 - 04:21 PM

495. Defendants knowingly intercepted Plaintiff and the Class members' wire and oral communications by collecting by intercepting oral communications from any external device physically connected to the LG Smart TV. Defendants also intercepted Plaintiff and the Class members' wire and oral communications by collecting audio data from the built in microphone and Magic Remote microphone connected with and/or attached to LG Smart TVs.

496. Defendants knowingly used electronic devices within the LG Smart TVs, including microphones, to intercept oral communications of Plaintiffs and all Class members and used such electronic devices to transmit data of those oral communications to themselves and third parties.

497. Plaintiffs and the Class members had a reasonable expectation of privacy in their communications and a legitimate right to safeguard those communications. Defendants knowingly disregarded this right by collecting, storing, and selling Plaintiffs' and the Class members' data without their knowledge or informed consent. The method by which Defendants obtained and disclosed Plaintiffs' and the Class member's data would be highly offensive and objectionable to a reasonable person. Defendants' collection and disclosure therefore violated Plaintiffs' right to privacy.

498. Any person whose wire communication is intercepted, disclosed, or used in violation of the statute "shall have a civil cause of action against any person who intercepts, discloses, or uses, or procures any other person to intercept, disclose, or use such communications." RS Mo § 542.418.

499. Defendants violated the Missouri Wiretap Act by intercepting Plaintiffs' and the Class members' wire communications in violation of RS Mo § 542.402(1) and by using electronic devices to intercept oral communications and transmit such oral communications to

Electronically Filed - St Louis County - October 06, 2026 - 04:21 PM

Defendants and third parties.

500. Defendants violated the Missouri Wiretap Act by disclosing the content of Plaintiffs and the Class members wire communication to third parties, or to market Defendants' advertising or software platforms as more robust or useful to its advertisers, in violation of § 542.402(3).

501. Defendants also violated the Missouri Wiretap Act by "knowingly" using the contents of Plaintiffs and the Class members wire communication to barter and/or sell that information to third parties in violation of RS Mo § 542.402(4).

502. Defendants qualify as persons under the statute.

503. Defendants were not a party to the oral and wire communications that they intercepted. Any wire or oral communication that was intercepted, used, or disclosed, was a communication between Plaintiffs and the Class members and themselves or with other parties not being LG or LG Ad Solutions.

504. Plaintiffs and the Class members did not consent to Defendants' interception of their oral and wire communications.

505. Common understanding and experience of how televisions work create a reasonable expectation that television manufacturers would not surreptitiously intercept and divert the detailed, private, and sensitive data and sounds described above.

506. All communications accessed by the Defendants qualify as wire communications under Missouri law because each communication was made using personal computing devices that send and receive communications in whole or in part through the use of facilities used for the transmission of communications aided by wire, cable, or other like connections.

507. A "wire communication" under the statute means "any communication made in

Electronically Filed - St Louis County - October 06, 2026 - 04:21 PM

whole or in part through the use of facilities for the transmission of communications by the aid of wire, cable, or other like connection between the point of origin and the point of reception." RS Mo § 542.400(12).

508. Defendants engaged and continue to engage in interception by secretly recording the contents of Plaintiffs' and the Class members' wire communications.

509. The intercepting devices used in this case include, but are not limited to:

a. Plaintiffs and the Class members' personal computing devices;

b. Plaintiffs and Class members' web browsers;

c. Plaintiffs and Class members' browser-managed files;

d. Internet cookies;

e. Defendant's computer servers;

f. Third-party source code utilized by Defendants;

g. Microphones and data harvesting devices placed within the LG Smart TVs; and/or

h. Computer servers of third parties to which Plaintiffs and Class Members' communications were disclosed.

510. "Contents" under the statute, when used with respect to any wire communication, includes "any information concerning the identity of the parties, the substance, purport, or meaning of that communication." RS Mo § 542.400(3).

511. Defendants aided in, and continue to intercept contents of data from the communications between Plaintiffs and/or the Class members and others that were collected, stored, and disclosed to third parties including information which identifies the parties to each communication, their existence, and their contents.

512. Defendants intercepted "contents" in at least the following forms:

Electronically Filed - St Louis County - October 06, 2026 - 04:21 PM

a. The parties to the communications;

b. The precise text of internet search queries;

c. Personally identifying information such as IP addresses, social media IDs, browser fingerprints, geographic locations, telephone numbers, addresses, and other unique identifiers;

d. The precise text of communications had by Plaintiffs and the Class members with others, including the substance, purport, and meaning of those communications;

e. The precise text of privileged communications had by Plaintiffs and the Class members with others including the substance, purport, and meaning of those communications;

f. The precise text of communications regarding sensitive financial information including the substance, purport, and meaning of those communications;

g. The precise date and time when Plaintiffs and the Class members accessed websites;

h. The precise buttons that Plaintiffs and the Class members press on their phone and/or the internet including the substance, purport, and meaning of communications made through the use of such buttons;

i. Information that is a general summary or informs third parties of the general subject of communications that Plaintiffs and the Class members had with others.

j. Any other content that Defendants scraped from webpages or communication forms at web properties.

513. Plaintiffs and the Class members reasonably expected that their private and sensitive data, and private oral conversations were not being intercepted, recorded, and disclosed

Electronically Filed - St Louis County - October 06, 2026 - 04:21 PM

to third parties by their Smart TVs.

514. No legitimate commercial purpose was served by Defendants' willful and intentional disclosure of Plaintiffs and the Class members private and sensitive wire and oral communications intercepted by Defendants. Neither Plaintiffs nor the Class members had knowledge of or gave informed consent to the disclosure of their wire and oral communications to third parties. Nor could they have given consent given that Defendants made it near impossible for purchasers and leasers to learn of its activities.

515. Plaintiffs' and the Class members' wire and oral communications were intercepted during transmission, without their consent, for the unlawful and wrongful purpose of monetizing their private and sensitive information, including using this sensitive information to develop marketing strategies.

516. Defendants' violation of RS Mo 542.042 caused Plaintiffs and the Class Members, at minimum, the following damages:

a. Sensitive and confidential information that Plaintiffs and Class Members intended to remain private is no longer private;

b. Defendants eroded the essential confidential nature of the physician-patient and provider-patient relationship;

c. Defendants eroded the essential confidential nature of the psycho-therapist and provider-patient relationship;

d. Defendants eroded the essential confidential nature of the attorney-client relationship;

e. Defendants accessed and sold Plaintiffs' and the Class members' sensitive financial information;

Electronically Filed - St Louis County - October 06, 2026 - 04:21 PM

f. Defendants took something of value from Plaintiffs and Class Members and derived benefit therefrom without Plaintiffs and Class Members' knowledge, consent, or authorization and without sharing the benefit of such value;

g. Defendants' actions diminished the value of Plaintiffs' and Class Members' personal information; and

h. Defendants' actions eroded the sanctity and privacy of Plaintiffs and the Class members households.

517. Defendant knew they were acting in violation of the Missouri Wiretapping Law for the following reasons:

a. The numerous, obvious consent and privacy challenges to the collection of data and oral communications that both LG and LG Ad Solutions acknowledged to Hightouch;

b. The opaque disclosures or complete lack of disclosures in LG and LG Ad Solution's various terms and policies which did not operate as a reasonable basis for inferring consumer consent to share the information with LG, LG Ad Solutions, and/or Hightouch.

c. The sheer volume of wire and oral communication that LG and LG Ad Solutions intercepted without consumer knowledge or informed consent;

d. The lack of public knowledge about LG, LG Ad Solutions, and Hightouch's collection and sharing practices;

e. The fact that LG, LG Ad Solutions, and Hightouch, have continued their unlawful collection processes after it was publicized that they were engaged in unlawful practices; and

Electronically Filed - St Louis County - October 06, 2026 - 04:21 PM

f. The nature of the data as such that it had to be obtained via an interception of oral and wire communications.

518. Under the Missouri Wiretapping Act, aggrieved persons are entitled to recover actual damages, but not less than liquidated damages computed at the rate of one hundred dollars per day for each violation or ten thousand dollars, whichever is greater, punitive damages, and reasonable attorney's fees and other litigation costs. RS Mo § 542.418.

WHEREFORE Plaintiffs and all Class members seek appropriate relief for their injuries, including, but not limited to, statutory liquidated damages pursuant to 542.418 as well as a disgorgement of profits made by Defendants' as a result of its intrusions on Plaintiffs' and all Class members' privacy. Plaintiffs and all Class members seek reasonable attorney's fees if they are the prevailing party pursuant to 542.418. Plaintiffs and the Class members also seek such other relief as the Court may deem equitable, legal, and proper.

**COUNT VI**
**All Class Members**
**Defendants LG and LG Ad Solutions**
**Unjust Enrichment**

519. Plaintiffs incorporate the general factual allegations as if set forth fully herein.

520. Plaintiffs bring this claim on behalf of themselves and all Class members.

521. Plaintiffs and the Class members purchased LG Smart TV's that were the same or substantially similar, or resided in homes containing the same or substantially similar LG Smart TVs.

522. LG Smart TVs are intended to for direct use by consumers.

523. Plaintiffs and the Class members purchased and/or leased LG Smart TV's primarily for personal, family, or household purposes.

524. Defendants employed deceptive and unfair business practices by concealing,

Electronically Filed - St Louis County - October 06, 2026 - 04:21 PM

suppressing, and/or omitting from privacy policies, terms of use, advertisements, product packaging, and other materials associated with the purchase of the Smart TVs that the TV mines and sells data from not only the Smart TVs, but from any device physically connected to the TVs or on the same network as the Smart TVs.

525. Defendants employed deceptive and unfair business practices by concealing, suppressing, and/or omitting from privacy policies, terms of use, advertisements, product packaging, and other materials associated with the purchase of the Smart TVs that the TV listens to sounds within its vicinity and records, transcribes, stores, and sells the data it collects from listening.

526. The fact that the Smart TVs mine data from physically connected and not physically connected devices and sell the data is material.

527. The fact that the Smart TVs listen, record, transcribe, store, and sell data based on sound collection is material.

528. Plaintiffs and the Class members acted as reasonable consumers when they purchased LG Smart TVs because no reasonable consumer would, based on the deceptive acts and omissions of Defendants, have notice and/or knowledge that the Smart TV would mine, store, and sell data and sound not only from the TV but from any devices connected to the TV, on the same network as the TV, or sounds in the vicinity of the TV.

529. Defendants took advantage of Plaintiffs and the Class members by concealing these material facts and collecting and mining their data.

530. Plaintiffs and the Class members owned their data.

531. Plaintiffs and the Class members' data was valuable.

532. Defendants were enriched by their unlawful data collection activities because it

Electronically Filed - St Louis County - October 06, 2026 - 04:21 PM

sold the data it collected from Plaintiffs and the Class members for a profit, or used such unlawfully collected data to reap ill-gotten profits.

533. Defendants' enrichment was at the expense of Plaintiffs and the Class members because it deprived them of their own rights to their data and diminished the value of their data.

534. It would be unjust to allow Defendants to retain the benefits it leeched from Plaintiffs and the Class because it would reward Defendants' unfair and deceptive practices.

535. The benefits Defendants' unjustly obtained from their illicit data collection should be returned to Plaintiffs and all Class members in the form of restitution.

WHEREFORE Plaintiffs and all Class members seek appropriate relief for their injuries, including, but not limited to, restitution from Defendants for the unjustly obtained benefits they received from the privacy intrusions and unlawful data collection practices they engaged in. Plaintiffs and all Class members also seek such other relief as the Court may deem equitable, legal, and proper.

**COUNT VII**
**All Class Members**
**Defendant Hightouch**
**Interception of Wire Communications in Violation of RS Mo §§ 542.402 & 542.418**

536. Plaintiffs incorporate the general factual allegations and the allegations of Count V as if set forth fully herein.

537. Plaintiffs bring this claim on behalf of themselves and all Class members.

538. Hightouch's software sits on top of and is intertwined with existing LG and LG Ad Solution software contained in LG Smart TVs and therefore intercepts wire communications to the same or greater extent as LG and LG Ad Solutions.

539. Defendant knowingly used, or endeavored to use the contents of wire communications it knew to be obtained through the interception of a wire communication in

Electronically Filed - St Louis County - October 06, 2026 - 04:21 PM

violation of 542.402 by accessing, collecting, storing, and selling data from wire communications intercepted by LG and LG Ad Solutions.

540. Defendant knowingly used, endeavored to use, or procured LG and LG Ad Solutions technology to intercept oral communications, collect data from those transmissions, store that data, and sell that data to third parties.

541. Defendant knowingly intercepted, endeavored to intercept, or procured LG and LG Ad Solutions to use their technology to intercept wire and oral communications for the purposes of collecting, storing, and selling data derived from those intercepted wire communications to third parties.

542. Defendant intercepted Plaintiffs' and the Class members' wire and oral communications for the purpose of committing multiple tortious acts, including, but not limited to, invasion of privacy by intrusion upon seclusion and public disclosure of private facts in violation of the Missouri common law.

543. Defendant intercepted Plaintiffs' and the Class members' wire and oral communications for the purpose of disclosing those communications to third parties without the knowledge, consent, or written authorization of Plaintiffs or Class members. Because the disclosure of Plaintiffs' and the Class members' sensitive personal information, data, and conversations, without their knowledge, informed consent, or authorization, Defendant deprived Plaintiffs and the Class members of their property rights and caused Plaintiffs and the Class members injury by diminishing the value of their data, depriving them of the right to control who had access to their data, and invading their privacy.

544. Defendant's decision to steal and exploit Plaintiffs' and the Class members' data without their knowledge or informed consent is sufficient to bring Defendant's conduct within

Electronically Filed - St Louis County - October 06, 2026 - 04:21 PM

the ambit of Missouri's wiretapping statute.

545. Defendant's knowingly used, endeavored, to use, and/or procured the use of electronic devices within the LG Smart TVs including microphones, to intercept oral communications of Plaintiffs and all Class Members and used such electronic devices to transmit data of those oral communications to themselves and third parties.

546. Defendant's interception and/or use of Plaintiffs' and the Class members' oral and wire communications for the purpose of disclosing their sensitive and private data is a tortious act constituting an invasion of privacy under Missouri law.

547. Plaintiffs and the Class members had a reasonable expectation of privacy in their data and a legitimate right to safeguard that data. Defendant disregarded this right by collecting, storing, using, and selling Plaintiffs and the Class members data without their knowledge or informed consent. The method by which Defendant's obtained Plaintiffs' and the Class member's data would be highly offensive and objectionable to a reasonable person. Defendant's collection and disclosure therefore violated Plaintiffs' right to privacy.

548. Any person whose wire communication is intercepted, disclosed, or used in violation of the statute "shall have a civil cause of action against any person who intercepts, discloses, or uses, or procures any other person to intercept, disclose, or use such communications." RS Mo § 542.418.

549. Defendant violated the Missouri Wiretap Act by intercepting Plaintiffs' and the Class members' wire and oral communications in violation of RS Mo § 542.402(1) and by using electronic devices to intercept oral communications and transmit such oral communications to Defendant and third parties.

550. Defendant violated the Missouri Wiretap Act by disclosing the content of

Electronically Filed - St Louis County - October 06, 2026 - 04:21 PM

Plaintiffs' and the Class members' wire and oral communications to third parties in violation of § 542.402(3).

551. Defendant also violated the Missouri Wiretap Act by "knowingly" using the contents of Plaintiffs' and the Class members' wire and oral communications to barter and/or sell that information to third parties, or to market Defendant's advertising or software platforms as more robust or useful to advertisers, in violation of RS Mo § 542.402(4).

552. Defendant qualifies as a person under the statute.

553. Defendant was not a party to Plaintiffs' and the Class members' oral and wire communications. Any wire or oral communication that intercepted, used, or disclosed, was a communication between Plaintiffs and the Class members and themselves or with other parties not being Hightouch.

554. Plaintiffs and the Class members did not give consent to Hightouch to intercept, use, or disclose their wire and oral communications.

555. All communications accessed by the Defendants qualify as wire communications under Missouri law because each communication was made using personal computing devices that send and receive communications in whole or in part through the use of facilities used for the transmission of communications aided by wire, cable, or other like connections.

556. A "wire communication" under the statute means "any communication made in whole or in part through the use of facilities for the transmission of communications by the aid of wire, cable, or other like connection between the point of origin and the point of reception." RS Mo § 542.400(12).

557. Defendant engaged and continues to engage in interception by secretly recording the contents of Plaintiffs and the Class members wire communications.

Electronically Filed - St Louis County - October 06, 2026 - 04:21 PM

558. The intercepting devices used in this case include, but are not limited to:

a. Plaintiffs' and the Class members' personal computing devices;

b. Plaintiffs' and Class members' web browsers;

c. Plaintiffs' and Class members' browser-managed files;

d. Internet cookies;

e. Defendant's computer servers

f. Microphones and data harvesting devices placed within the LG Smart TVs;

g. Third-party source code utilized by Defendants; and

h. Computer servers of third parties to which Plaintiffs and Class Members' communications were disclosed.

559. "Contents" under the statute, when used with respect to any wire communication, includes "any information concerning the identity of the parties, the substance, purport, or meaning of that communication." RS Mo § 542.400(3).

560. Defendant aided in, and continues to intercept contents of data from the communications between Plaintiffs and the Class members and others that were collected, stored, and disclosed to third parties including information which identifies the parties to each communication, their existence, and their contents.

561. Defendant used, and continues to use contents of data from which the communications between Plaintiffs and the Class members and others that were collected, stored and disclosed to third parties including which identifies the parties to each communication, their existence, and their contents.

562. Defendant did and continues to procure the other Defendants, to intercept and/or endeavor to intercept the contents of data from which the communications between Plaintiffs and

Electronically Filed - St Louis County - October 06, 2026 - 04:21 PM

the Class members and others that were collected, stored, and disclosed to third parties including which identifies the parties to each communication, their existence, and their contents.

563. Defendant intercepted, used, procured interception of, or endeavored to intercept "contents" in at least the following forms:

a. The parties to the communications;

b. The precise text of internet search queries;

c. Personally identifying information such as IP addresses, social media IDs, browser fingerprints, geographic locations, telephone numbers, addresses, and other unique identifiers;

d. The precise text of communications had by Plaintiffs and the Class members with others including the substance, purport, and meaning of those communications;

e. The precise text of privileged communications had by Plaintiffs and the Class members with others including the substance, purport, and meaning of those communications;

f. The precise text of communications regarding sensitive financial information including the substance, purport, and meaning of those communications;

g. The precise date and time when Plaintiffs and the Class members accessed websites;

h. The precise buttons that Plaintiffs and the Class members press on their Smart TV and/or the internet including the substance, purport, and meaning of those communications that the buttons represented;

i. Information that is a general summary or informs third parties of the general subject of communications that Plaintiffs and the Class members had with others

Electronically Filed - St Louis County - October 06, 2026 - 04:21 PM

including the substance, purport, and meaning of those communications; and

j. Any other content that Defendants scraped from webpages or communication forms at web properties.

564. Defendant knew they were acting in violation of the Missouri Wiretapping Law for the following reasons:

a. The numerous, obvious consent and privacy challenges to the collection of data and oral communications that both LG and LG Ad Solutions acknowledged to Hightouch;

b. The opaque disclosures or complete lack of disclosures in LG and LG Ad Solution's various terms and policies which did not operate as a reasonable basis for inferring consumer consent to share the information with LG, LG Ad Solutions, and/or Hightouch.

c. The sheer volume of intercepted wire and oral communications that Hightouch was receiving from LG and LG Ad Solutions gave Hightouch reason to know that LG and LG Ad Solutions were harvesting data and oral communications without consumer knowledge or informed consent;

d. The lack of public knowledge about LG, LG Ad Solutions, and Hightouch's collection and sharing practices;

e. The fact that LG, LG Ad Solutions, and Hightouch, have continued their unlawful collection processes after it was publicized that they were engaged in unlawful practices; and

f. The nature of the data as such that it had to be obtained via an interception of oral and wire communications.

Electronically Filed - St Louis County - October 06, 2026 - 04:21 PM

565. Plaintiffs and the Class members reasonably expected that their private and sensitive information was not being intercepted, recorded, and disclosed to third parties by their Smart TVs.

566. No legitimate commercial purpose was served by Defendant's willful and intentional disclosure of Plaintiffs' and the Class members' private and sensitive wire and oral communications intercepted by Defendant. Neither Plaintiffs nor the Class members had knowledge of or gave informed consent to the disclosure of their wire and oral communications to third parties. Nor could they have given consent given that Defendant made it near impossible for purchasers and leasers to learn of its activities.

567. Plaintiffs' and the Class members' oral and wire communications were intercepted during transmission, without their consent, for the unlawful and wrongful purpose of monetizing their private and sensitive information, including using this sensitive information to develop marketing strategies.

568. Defendant's violations of RS Mo 542.402 caused Plaintiffs and the Class Members, at minimum, the following damages:

a. Sensitive and confidential information that Plaintiffs and Class Members intended to remain private is no longer private;

b. Defendant eroded the essential confidential nature of the physician-patient and provider-patient relationship;

c. Defendant eroded the essential confidential nature of the psycho-therapist and provider-patient relationship;

d. Defendant eroded the essential confidential nature of the attorney-client relationship;

Electronically Filed - St Louis County - October 06, 2026 - 04:21 PM

e. Defendant accessed and sold Plaintiffs and the Class members sensitive financial information;

f. Defendant took something of value from Plaintiffs and Class Members and derived benefit therefrom without Plaintiffs and Class Members' knowledge, consent, or authorization and without sharing the benefit of such value;

g. Defendant's actions diminished the value of Plaintiffs and Class Members' personal information; and

h. Defendant's actions eroded the sanctity and privacy of Plaintiffs and the Class members households.

569. Under the Missouri Wiretapping Act, aggrieved persons are entitled to recover actual damages, but not less than liquidated damages computed at the rate of one hundred dollars per day for each violation or ten thousand dollars, whichever is greater, punitive damages, and reasonable attorney's fees and other litigation costs. RS Mo § 542.418.

WHEREFORE Plaintiffs and all Class members seek appropriate relief for their injuries, including, but not limited to, statutory liquidated damages pursuant to 542.418 as well as a disgorgement of profits made by Defendants' as a result of its intrusions on Plaintiffs' and all Class members' privacy. Plaintiffs and all Class members seek reasonable attorney's fees if they are the prevailing party pursuant to 542.418. Plaintiffs and all Class members also seek such other relief as the Court may deem equitable, legal, and proper.

**COUNT VIII**
**All Class Members**
**Defendant Hightouch**
**Tampering with Computer Data in Violation of RS Mo §§ 569.095 & 537.525**

570. Plaintiffs incorporate the general factual allegations and those allegations set out in Count IV as if set forth fully herein.

Electronically Filed - St Louis County - October 06, 2026 - 04:21 PM

571. Plaintiffs bring this claim on behalf of themselves and all members of the Class.

572. Plaintiffs and all Class members purchased and/or leased LG Smart TVs, and/or resided in households with LG Smart TVs

573. Plaintiffs and all Class members purchased LG Smart TVs primarily for personal, family, or household purposes, and/or resided in households where LG Smart TVs were primarily used for such purposes.

574. Defendant mined, collected, and sold data from devices physically connected to the LG Smart TVs without Plaintiffs' and the Class members' knowledge, informed consent, or authorization.

575. Defendants mined, collected, and sold data from devices not physically connected to the LG Smart TVs but on the same as or nearby networks to the LG Smart TVs without Plaintiffs and the Class members' knowledge, informed consent, or authorization.

576. Defendants listened, recorded, transcribed, stored, and sold sounds made by Plaintiffs and the Class members within the vicinity of the LG Smart TVs, that were then stored on the LG Smart TVs, without Plaintiffs' or the Class members' knowledge, informed consent, or authorization.

577. Defendant did not have reasonable grounds to believe that it had authorization to employ the above-described data collection methods in large part because Defendant entered into no contract or other form of agreement with Plaintiffs and Class members nor did they take any steps whatsoever to inform Plaintiff and the Class members of their invasive and unlawful activities.

578. Defendant accessed Plaintiffs' and all Class members' computers, computer systems, and computer networks via its software integrated into every LG Smart TV

Electronically Filed - St Louis County - October 06, 2026 - 04:21 PM

intentionally with the purpose of examining information about them without Plaintiffs' and the Class members' knowledge, informed consent, or authorization.

579. Defendant accessed Plaintiffs' and all Class members' computers, computer systems, and computer networks via its software integrated into every LG Smart TV intentionally. After they had access to those computers, systems, and networks, Defendant collected, recorded, transcribed, and disclosed data, documentation, passwords, identifying codes, personal identification numbers, and/or other confidential information maintained therein.

580. Defendant disclosed personally identifiable information including, but not limited to, Plaintiffs' and the Class members' IP address, geographic location, name of every Wi-Fi network in the vicinity and signal strength, channel numbers of neighboring Wi-Fi networks in range, and other devices on the network, even if not connected to the TV in any way, the internal IP address of those networks, telephone numbers, passwords, names, sensitive financial information, and more as discovery will reveal.

581. Defendant received, retained, used, and disclosed data it knew to be obtained in violation of 569.095 by receiving, storing, selling, and advertising the consumer data it received or was granted access to by LG and LG Ad Solutions.

582. This disclosure of personally identifiable information constitutes an unreasonable, substantial, and serious interference with Plaintiffs' and the Class members' legal rights.

583. Plaintiffs and the Class members did not consent to, authorize, or know of Defendants access to, use of, and/or disclosure of of their personal information to Hightouch, LG, LG Ad Solutions, and other third parties as discovery will reveal, at the times it occurred.

584. Plaintiffs and the Class members never agreed that their sensitive information could be collected, used, and monetized by Defendant.

Electronically Filed - St Louis County - October 06, 2026 - 04:21 PM

585. Defendant's disclosure of private data from over one million Missourians was highly offensive because it violated expectations of privacy that have been established by social norms and Missouri law.

586. Privacy polls and studies show that Americans believe that one of the most important privacy rights is the need for an individual's affirmative consent before it is collected, shared, or used.

587. Thus, the disclosure of this information was highly offensive to a reasonable person.

588. Plaintiffs and the Class members own their data.

589. Missouri Revised Statute Section 537.525 authorizes parties like Plaintiffs and the Class members to bring a civil action against any person who violates Section 569.095 for compensatory damages and reasonable attorney fees.

590. Defendant's violations of RS Mo 569.095 caused Plaintiffs and the Class Members, at minimum, the following damages:

a. Sensitive and confidential information that Plaintiffs and Class Members intended to remain private is no longer private;

b. Defendant eroded the essential confidential nature of the physician-patient and provider-patient relationship;

c. Defendant eroded the essential confidential nature of the psycho-therapist and provider-patient relationship;

d. Defendant eroded the essential confidential nature of the attorney-client relationship;

e. Defendant accessed and sold Plaintiffs' and all Class members' sensitive financial

Electronically Filed - St Louis County - October 06, 2026 - 04:21 PM

information;

f. Defendant took something of value from Plaintiffs and Class Members and derived benefit therefrom without Plaintiffs' and Class Members' knowledge, consent, or authorization and without sharing the benefit of such value;

g. Defendant's actions diminished the value of Plaintiffs and Class Members' personal information; and

h. Defendant's actions eroded the sanctity and privacy of Plaintiffs' and all Class members' households.

591. Plaintiffs and all Class members have suffered harm and injury, including, but not limited to, the invasion of their privacy rights.

592. Plaintiffs and all Class members have been damaged as a direct and proximate result of Defendant's invasion of their privacy and are entitled to seek just compensation including monetary damages.

WHEREFORE Plaintiffs and all Class members seek appropriate relief for their injuries, including, but not limited to, damages that will reasonably compensate Plaintiffs and all Class members for the harm to their privacy interests as well as a disgorgement of profits made by Defendant's as a result of its intrusions on Plaintiffs' and all Class members' privacy. Plaintiffs' and all Class members' seek reasonable attorney's fees if they are the prevailing party pursuant to 537.525. Plaintiffs and the Class members also seek such other relief as the Court may deem equitable, legal, and proper.

**COUNT IX**
**All Class Members**
**Defendant Hightouch**
**Invasion of Privacy -- Tortious Intrusion on Seclusion**

593. Plaintiffs incorporate the general factual allegations as if set forth fully herein.

Electronically Filed - St Louis County - October 06, 2026 - 04:21 PM

594. Plaintiffs bring this claim on behalf of themselves and all Class members.

595. Missouri established a right to privacy in Article I, Section 15 of the Missouri Constitution.

596. Plaintiffs and all Class members purchased and/or leased LG Smart TVs, and/or resided in households with LG Smart TVs.

597. Plaintiffs and all Class members purchased LG Smart TVs primarily for personal, family, or household purposes, and/or resided in homes where LG Smart TVs were used primarily for such purposes and/or resided in a household containing an LG Smart TV used for the same purpose.

598. Defendant intentionally intruded on the solitude, seclusion, and/or private affairs of Plaintiffs and all Class members by collecting data from devices physically connected to LG Smart TVs, storing, and selling that data without the knowledge or informed consent of Plaintiffs and the Class members.

599. Defendant intentionally intruded on the solitude, seclusion, and/or private affairs of Plaintiffs and all Class members by collecting data from LG Smart TVs selling that data without the knowledge or informed consent of Plaintiffs and the Class members.

600. Defendant intentionally intruded on the private affairs of Plaintiffs and all Class members by collecting data from devices on the same network or on nearby networks as the LG Smart TVs and selling that data without Plaintiffs' and all Class members' knowledge or informed consent.

601. Defendant intentionally intruded on the private affairs of Plaintiffs and all Class members by listening to and recording sounds within the vicinity of the LG Smart TVs and recording, transcribing, storing, and selling that data without Plaintiffs and all Class members

Electronically Filed - St Louis County - October 06, 2026 - 04:21 PM

knowledge or informed consent.

602. The data and sounds mined and collected from Plaintiffs and all Class members contained information that was secret and private.

603. The data and sounds mined and collected from Plaintiffs and all Class members includes, but is not limited to, private health information, sensitive financial data, sensitive market data, attorney-client privileged information, physician-patient privileged communications, psychotherapist privileged communications, attorney-client privileged information, and other sensitive and private information.

604. Plaintiffs and all Class members had a legitimate and reasonable expectation of privacy with respect to the above-described data and were accordingly entitled to protection of this information against the acquisition and disclosure of that data by unreasonable means.

605. Plaintiffs and all Class members had the right to keep this information secret and private.

606. Defendant obtained this secret and private information unreasonably by employing unfair and deceptive business practices in the form of suppressing, concealing, or omitting material facts revealing the extent of its involvement and integration into LG Smart TVs data collection processes. Defendant failed to inform or make known that it was collecting, storing, and profiting off personal identifying data about the consumers.

607. Defendant did not give consumers the opportunity to consent to the collection, storage, and dissemination of their personally identifying data that Hightouch collected and sold to third-parties.

608. Defendant did not enter into any contract or otherwise agreement with Plaintiffs and the Class members, nor did it grant them the opportunity to.

Electronically Filed - St Louis County - October 06, 2026 - 04:21 PM

609. Instead, it covertly integrated itself into LG Smart TVs without consumer knowledge or informed consent and clandestinely collected and appropriated their data for their own corporate gain.

610. By employing these unfair and deceptive practices, Defendant engaged in a pattern of conduct aimed at ensuring that Plaintiffs and the Class members could not obtain knowledge about its collection and sale of their data and sounds.

611. By employing these unfair and deceptive practices, Defendant engaged in a pattern of conduct aimed at ensuring that Plaintiffs and all Class members could not give informed consent to the collection and sale of their data and sounds.

612. Defendant's unauthorized acquisition, appropriation, and disclosure of Plaintiffs' and all Class members' private data is unreasonable and highly offensive to reasonable persons.

613. Defendant acted with a knowing mind when they intentionally violated Plaintiffs' and the Class members' privacy by collecting and selling their private data.

614. Acting with knowledge, Defendant had notice and knew that its disclosure of Plaintiffs' and the Class members' data to third parties would cause injury to all Class members.

615. As a direct and proximate result of Defendant's acts and/or omissions, Plaintiffs' and the Class members' private data was collected and sold to third parties without their authorization.

616. Defendant's breach caused Plaintiffs and the Class Members, at minimum, the following damages:

a. Sensitive and confidential information that Plaintiffs and Class Members intended to remain private is no longer private;

b. Defendant eroded the essential confidential nature of the physician-patient and

Electronically Filed - St Louis County - October 06, 2026 - 04:21 PM

provider-patient relationship;

c. Defendant eroded the essential confidential nature of the psycho-therapist and provider-patient relationship;

d. Defendant eroded the essential confidential nature of the attorney-client relationship;

e. Defendant accessed and sold Plaintiffs and the Class members sensitive financial information;

f. Defendant took something of value from Plaintiffs and Class Members and derived benefit therefrom without Plaintiffs and Class Members' knowledge, consent, or authorization and without sharing the benefit of such value;

g. Defendant's actions diminished the value of Plaintiffs and Class Members' personal information; and

h. Defendant's actions eroded the sanctity and privacy of Plaintiffs and the Class members households.

617. Plaintiffs and the Class members have suffered harm and injury, including, but not limited to, the invasion of their privacy rights.

618. Plaintiffs and the Class members have been damaged as a direct and proximate result of Defendant's invasion of their privacy and are entitled to seek just compensation including monetary damages.

WHEREFORE Plaintiffs and all Class members seek appropriate relief for their injuries, including, but not limited to, damages that will reasonably compensate Plaintiffs and all Class members for the harm to their privacy interests as well as a disgorgement of profits made by Defendant as a result of its intrusions on Plaintiffs and all Class members privacy. Plaintiffs and

Electronically Filed - St Louis County - October 06, 2026 - 04:21 PM

all Class members also seek such other relief as the Court may deem equitable, legal, and proper.

**COUNT X**
**All Class Members**
**Defendant Hightouch**
**Invasion of Privacy – Tortious Public Disclosure of Private Facts**

619. Plaintiffs incorporate the general factual allegations as if set forth fully herein.

620. Plaintiffs bring this claim on behalf of themselves and all members of the Class.

621. Plaintiffs and all Class members purchased and/or leased LG Smart TVs, and/or resided in households with LG Smart TVs

622. Plaintiffs and the Class members purchased LG Smart TVs primarily for personal, family, or household purposes, and/or lived in a household containing an LG Smart TV used for such purposes.

623. Defendant mined, collected, received, stored, and sold data from devices belonging to and used by Plaintiffs and all Class members which were physically connected to the LG Smart TVs without Plaintiffs' and the Class members' knowledge or informed consent.

624. Defendant mined, collected, and sold data from devices not physically connected to the LG Smart TVs but on the same as or nearby networks to the LG Smart TVs

625. Defendant listened, recorded, transcribed, received, used, stored, and sold sounds made by Plaintiffs and all Class members within the vicinity of the LG Smart TVs without Plaintiffs' or the Class members' knowledge or informed consent.

626. Defendant sold and/or shared and thereby publicized the data it collected from Plaintiffs and the Class members to a large number of persons and entities.

627. Plaintiffs and the Class members did not have knowledge that this collection and sale was occurring, nor did they give informed consent to its occurrence.

628. Defendant is not entitled to any privilege which would allow it to collect and sell

Electronically Filed - St Louis County - October 06, 2026 - 04:21 PM

this data without Plaintiffs' and the Class members' informed consent.

629. The data and sounds that Defendants collected and sold were private, secret, and sensitive.

630. The data and sounds mined and collected from Plaintiffs and all Class members includes, but not limited to, private health information, sensitive financial data, sensitive market data, attorney-client privileged information, physician-patient privileged communications, psychotherapist privileged communications, attorney-client privileged information, and other sensitive and private information, including personal identifiers such as sex, sexual preference, religion, race, ethnicity, and/or gender identity.

631. This secret, private, and sensitive data is not of any legitimate concern to the public or the large number of persons and entities that Defendant sold and disclosed this data too.

632. Plaintiffs and the Class members were brought shame, humiliation, and embarrassment by the disclosure of their private, secret, and sensitive data.

633. Plaintiffs and the Class members suffered damages in the form of humiliation, embarrassment, the sale of their valuable data without their consent, and other damages as discovery will reveal.

634. Plaintiffs and the Class members have suffered harm and injury, including, but not limited to, the invasion of their privacy rights.

635. Defendant's breach caused Plaintiffs and the Class Members, at minimum, the following damages:

a. Sensitive and confidential information that Plaintiffs and Class Members intended to remain private is no longer private;

b. Defendant eroded the essential confidential nature of the physician-patient and

Electronically Filed - St Louis County - October 06, 2026 - 04:21 PM

provider-patient relationship;

c. Defendant eroded the essential confidential nature of the psycho-therapist and provider-patient relationship;

d. Defendant eroded the essential confidential nature of the attorney-client relationship;

e. Defendant accessed and sold Plaintiffs and all Class members sensitive financial information;

f. Defendant took something of value from Plaintiffs and Class Members and derived benefit therefrom without Plaintiffs and Class Members' knowledge, consent, or authorization and without sharing the benefit of such value;

g. Defendant's actions diminished the value of Plaintiffs and Class Members' personal information; and

h. Defendant's actions eroded the sanctity and privacy of Plaintiffs and all Class members households.

636. Plaintiffs and all Class members have been damaged as a direct and proximate result of Defendant's invasion of their privacy and are entitled to seek just compensation including monetary damages.

WHEREFORE Plaintiffs and all Class members seek appropriate relief for their injuries, including, but not limited to, damages that will reasonably compensate Plaintiffs and all Class members for the harm to their privacy interests as well as a disgorgement of profits made by Defendant as a result of its intrusions on Plaintiffs' and all Class members' privacy. Plaintiffs and all Class members also seek such other relief as the Court may deem equitable, legal, and proper.

Electronically Filed - St Louis County - October 06, 2026 - 04:21 PM

**COUNT XI**
**All Class Members**
**Defendant Hightouch**
**Unjust Enrichment**

637. Plaintiffs incorporate the general fact allegations as if set forth fully herein.

638. Plaintiffs bring this claim on behalf of themselves and all Class members.

639. Plaintiffs and the Class members purchased LG Smart TV's that were the same or substantially similar, or resided in homes containing the same or substantially similar LG Smart TVs.

640. LG Smart TVs are intended to for direct use by consumers.

641. Plaintiffs and the Class members purchased and/or leased LG Smart TV's primarily for personal, family, or household purposes, and/or resided in households with LG Smart TV's primarily purchased for the same purpose.

642. Defendant employed deceptive and unfair business practices by concealing, suppressing, and/or omitting the material fact that its software was integrated into the LG Smart TVs and that it was collecting, storing, and selling consumer data.

643. Defendant employed deceptive and unfair business practices by concealing, suppressing, and/or omitting the material fact that its software was integrated into the LG Smart TVs and that it was collecting consumer data and voice data and matching it in order to personally identify each and every consumer and child in the vicinity of an LG Smart TV.

644. The fact that the Smart TVs mine data from physically connected and not physically connected devices and sell the data is material.

645. The fact that the Smart TVs listen, record, transcribe, store, and sell data based on sound collection is material.

646. Plaintiffs and the Class members acted as reasonable consumers when they

Electronically Filed - St Louis County - October 06, 2026 - 04:21 PM

purchased LG Smart TVs because no reasonable consumer would, based on the deceptive acts and omissions by Defendant, have notice and/or knowledge that the Smart TV would mine, store, and sell data and sound not only from the TV but from any devices connected to the TV, on the same network as the TV, or sounds in the vicinity of the TV.

647. Defendant took advantage of Plaintiffs and the Class members by concealing these material facts and collecting, mining, and storing their data.

648. Plaintiffs and the Class members owned their data.

649. Plaintiffs and the Class members' data was valuable.

650. Defendant was enriched by its unlawful data collection activities because it sold the data it collected from Plaintiffs and the Class members for a profit, advertised their data as a part of its product which it then sold to other large corporations, and generally benefitted its software, products, and services by expanding the pool of ill-gotten, private data, in its possession to expand the intrusive nature of its activities.

651. Defendant was also enriched by using data that was unlawfully collected by itself, LG Ad Solutions, and LG to reap ill-gotten gains.

652. Defendant's enrichment was at the expense of Plaintiffs and the Class members because it deprived them of their own rights to their data and diminished the value of their data.

653. It would be unjust to allow Defendant to retain the benefits it leeched from Plaintiffs and the Class because it would reward Defendants' unfair and deceptive practices.

654. The benefits Defendant unjustly obtained from its illicit data collection should be returned to Plaintiffs and all Class members in the form of restitution.

WHEREFORE Plaintiffs and the Class members seek appropriate relief for their injuries, including, but not limited to, restitution from Defendant for the unjustly obtained benefits they

Electronically Filed - St Louis County - October 06, 2026 - 04:21 PM

recieved from the privacy intrusions and unlawful data collection practices it engaged in. Plaintiffs and the Class members also seek such other relief as the Court may deem equitable, legal, and proper.

## Legal Claims for Relief Against All Defendants

**COUNT X**
**All Class Members**
**Defendants Hightouch, LG, and LG Ad Solutions**
**Civil Conspiracy**

655. Plaintiffs incorporate the general factual allegations and the above stated Counts as if set forth fully herein.

656. Plaintiffs bring this claim on behalf of themselves and all Class members.

657. Plaintiffs and the Class members purchased LG Smart TV's that were the same or substantially similar.

658. LG Smart TVs are intended to for direct use by consumers.

659. Plaintiffs and the Class members purchased and/or leased LG Smart TV's primarily for personal, family, or household purposes.

660. LG, LG Ad Solutions, and Hightouch ("Defendants") constitute persons in the context of civil conspiracy actions.

661. All actions, inactions, and/or omissions by LG, LG Ad Solutions, and Hightouch, are attributable to each Defendant as if those actions, inactions, and/or omissions were committed by each Defendant in their own capacity.

662. All actions, inactions, and/or omissions alleged in this count occurred after a meeting of the minds between Defendants wherein Defendants agreed to work together in furtherance of a conspiracy to violate Missouri statutory and common law to collect, intercept, mine, store, and sell confidential consumer data without Plaintiffs' and the Class members'

Electronically Filed - St Louis County - October 06, 2026 - 04:21 PM

knowledge and/or informed consent.

663. Defendants' objective was and continues to remain unlawful because in order to achieve the objective, Defendants committed and continue to commit the above alleged tortious invasions of privacy.

664. Defendants' objective was and continues to remain unlawful because in order to achieve the objective, Defendants committed and continue to commit violations of RS MO §§ 542.402, 569.095, and 407.020.

665. Defendants' objective was and continues to remain unjustly enriching themselves as alleged above.

666. Defendants, acting in concert and in furtherance of this conspiracy, integrated Hightouch's software with LG and LG Ad Solutions software installed on every LG Smart TV to maximize their joint abilities to collect, intercept, mine, store, and sell confidential consumer data without Plaintiffs and the Class members' knowledge or informed consent and to do in violation of Missouri statutory and common law.

667. Integrating Hightouch's software into LG Smart TVs allowed Hightouch to engage in the unlawful conduct alleged above.

668. Defendants LG and LG Ad Solutions were aware of and intended the result that by integrating Hightouch's software into its Smart TVs Hightouch would be able to commit the tortious and unlawful acts alleged above; and, indeed, were aware that integration with Hightouch would exacerbate the intrusive nature of their activities by pinpointing the identifying characteristics of all Class members.

669. Hightouch was aware of and intended the result that by integrating its software into LG and LG Ad Solutions Smart TVs they would be able to continue committing the tortious

Electronically Filed - St Louis County - October 06, 2026 - 04:21 PM

and unlawful acts alleged above and would be able to do so to a greater and more intrusive extent.

670. Defendants LG and LG Ad Solutions agreed to allow Hightouch to mine, collect, store, and sell data to other third parties that LG collected, mined, stored, and gave or sold to Hightouch, knowing that consumers did not have knowledge of or give informed consent to Hightouch's unlawful activities.

671. Defendants LG and LG Ad Solutions knew that the data it was giving and/or selling to Hightouch was obtained in violation of Missouri's Wiretapping Statute and that by integrating Hightouch's software into its Smart TVs it would be granting Hightouch the opportunity to similarly violate the same statute.

672. Defendants LG and LG Ad Solutions knew that the data it was giving and/or selling to Hightouch was obtained in violation of Missouri's Tampering With Computer Data Statute and that by integrating Hightouch's software into its Smart TVs it would be granting Hightouch the opportunity to similarly violate the same statute.

673. Defendants LG and LG Ad Solutions knew that the data it was giving and/or selling to Hightouch was obtained in violation of Missouri common law torts and that by integrating Hightouch's software into its Smart TVs it would be granting Hightouch the opportunity to similarly obtain data in violation of the same.

674. Defendants, acting in concert and in furtherance of the conspiracy, exchanged data with one another which they knew was obtained in violation of Missouri common and statutory law.

675. Defendants, acting in concert and in furtherance of the conspiracy, worked together to sell data obtained in violation of Missouri common and statutory law to third parties

Electronically Filed - St Louis County - October 06, 2026 - 04:21 PM

without their informed consent and knowledge.

676. Defendants, acting in concert and in furtherance of the conspiracy, worked together to generate exorbitant revenue wrongfully and at Plaintiffs' and the Class members' expense by selling confidential data that they jointly obtained in violation of Missouri common and statutory law.

677. As a result of Defendants' conspiracy to violate Missouri statutory and common law Plaintiffs and the Class Members, at minimum, the following damages:

a. The purchase price of the LG Smart TVs;

b. Sensitive and confidential information that Plaintiffs and Class Members intended to remain private is no longer private;

c. Defendant eroded the essential confidential nature of the physician-patient and provider-patient relationship;

d. Defendant eroded the essential confidential nature of the psycho-therapist and provider-patient relationship;

e. Defendant eroded the essential confidential nature of the attorney-client relationship;

f. Defendant accessed and sold Plaintiffs and the Class members sensitive financial information;

g. Defendant took something of value from Plaintiffs and Class Members and derived benefit therefrom without Plaintiffs and Class Members' knowledge, consent, or authorization and without sharing the benefit of such value;

h. Defendant's actions diminished the value of Plaintiffs and Class Members' personal information; and

Electronically Filed - St Louis County - October 06, 2026 - 04:21 PM

i. Defendant's actions eroded the sanctity and privacy of Plaintiffs and the Class members households.

678. Plaintiffs and the Class members have suffered harm and injury, including, but not limited to, the invasion of their privacy rights.

679. Plaintiffs and the Class members have been damaged as a direct and proximate result of Defendant's invasion of their privacy and are entitled to seek just compensation including monetary damages.

WHEREFORE Plaintiffs and the Class members seek appropriate relief for their injuries, including, but not limited to, actual damages, damages that will reasonably compensate Plaintiffs and the Class members for the harm to their privacy interests, statutory liquidated damages pursuant to 542.418, restitution, and a disgorgement of profits made by Defendant's as a result of its intrusions on Plaintiffs and the Class members privacy. Plaintiffs and the Class members seek reasonable attorney's fees if they are the prevailing party pursuant to 537.525 and 542.418. Plaintiffs and the Class members also seek such other relief as the Court may deem equitable, legal, and proper.

Respectfully Submitted,
SWMW LAW, LLC

By: ***/s/ Benjamin S. McIntosh***

Benjamin S. McIntosh, #68248
Jacob H. Benshoff #78987
ben.mcintosh@swmwlaw.com
jacob.benshoff@swmwlaw.com
Attorneys for Plaintiff
701 Market Street, Suite 1000
St. Louis, MO 63101
(314) 480-5180
(314) 932-1566 – Facsimile

Electronically Filed - St Louis County - October 06, 2026 - 04:21 PM

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing was served on all counsel of record through the Court's e-filing system on this 6th day of October, 2026.

***/s/ Benjamin S. McIntosh***

# Summons for Personal Service Outside the State of Missouri (Except Attachment Action)

IN THE 21ST JUDICIAL CIRCUIT, ST. LOUIS COUNTY, MISSOURI

| | | |
|---|---|---|
| Judge or Division:<br>DAVID L VINCENT III | **Case Number: 26SL-CC06700** | |
| Plaintiff/Petitioner:<br>GEORGE SOLOMON<br>vs. | Plaintiff's/Petitioner's Attorney/Address:<br>BENJAMIN STEPHEN MCINTOSH<br>701 MARKET STREET<br>SUITE 1000<br>ST. LOUIS, MO 63101 | |
| Defendant/Respondent:<br>LG ELECTRONICS USA, INC. | Court Address:<br>ST LOUIS COUNTY COURT BUILDING<br>105 SOUTH CENTRAL AVENUE<br>CLAYTON, MO 63105 | (Date File Stamp for Return) |
| Nature of Suit:<br>CC Other Tort | | |

**The State of Missouri to**: **ALPHONSO INC**
**Alias:**
**DBA: LG AD SOLUTIONS**

**THE CORP TRUST COMPANY**
**CORPORATION TRUST CENTER**
**1209 ORANGE ST**
**WILMINGTON, DE 19801**

You are summoned to appear before this court and to file your pleading to the petition, copy of which is attached, and to serve a copy of your pleading upon the attorney for the plaintiff/petitioner at the above address all within 30 days after service of this summons upon you, exclusive of the day of service. If you fail to file your pleading, judgment by default will be taken against you for the relief demanded in this action.

***COURT SEAL OF***

***ST. LOUIS COUNTY***

07-OCT-2026 — Date

/S/ Adam Dockery — Clerk

**Further Information:**
AD

## Officer's or Server's Affidavit of Service

I certify that:

1. I am authorized to serve process in civil actions within the state or territory where the above summons was served.
2. My official title is ________________________________ of _____________________ County, _______________ (state).
3. I have served the above Summons by: (check one)

☐ delivering a copy of the summons and petition to the defendant/respondent.

☐ leaving a copy of the summons and petition at the dwelling house or usual place of abode of the defendant/respondent with __________________________, a person at least 18 years of age residing therein.

☐ (for service on a corporation) delivering a copy of the summons and petition to:
______________________________________ (name) ________________________(title).

☐ other: ____________________________________________________________________.

Served at _________________________________________________________________ (address)
in ____________________________ (County), ____________ (state), on _________________(date)
at ___________ (time).

______________________________________ Printed Name of Officer or Server

______________________________________ Signature of Officer or Server

**Subscribed and sworn to** before me this ____ (day) ____________ (month), ______ (year).

I am: (check one) ☐ the clerk of the court of which affiant is an officer.

☐ the judge of the court of which affiant is an officer.

☐ authorized to administer oaths in the state in which the affiant served the above summons (use for out-of-state officer).

☐ authorized to administer oaths. (use for court-appointed server)

*(Seal)*

______________________________________
Signature and Title

**Service Fees**

Summons $____________
Non Est $____________
Mileage $____________ (______ miles @ $.______ per mile)
**Total** **$____________**

See the following page for directions to officer making return on service of summons.

Case Number: 26SL-CC06700

**Directions to Officer Making Return on Service of Summons**

A copy of the summons and petition must be served on each defendant/respondent. If any defendant/respondent refuses to receive the copy of the summons and petition when offered, the return shall be prepared accordingly so as to show the offer of the officer to deliver the summons and petition and the defendant's/respondent's refusal to receive the same.

Service shall be made: (1) On Individual. On an individual, including an infant or incompetent person not having a legally appointed guardian, by delivering a copy of the summons and petition personally to the individual or by leaving a copy of the summons and petition at the individual's dwelling house or usual place of abode with some person at least 18 years of age residing therein, or by delivering a copy of the summons and petition to an agent authorized by appointment or required by law to receive service of process; (2) On Guardian. On an infant or incompetent person who has a legally appointed guardian, by delivering a copy of the summons and petition to the guardian personally; (3) On Corporation, Partnership or Other Unincorporated Association. On a corporation, partnership or unincorporated association, by delivering a copy of the summons and petition to an officer, partner, or managing or general agent, or by leaving the copies at any business office of the defendant/respondent with the person having charge thereof or by delivering copies to its registered agent or to any other agent authorized by appointment or required by law to receive service of process; (4) On Public or Quasi-Public Corporation or Body. Upon a public, municipal, governmental or quasi-public corporation or body in the case of a county, to the mayor or city clerk or city attorney in the case of a city, to the chief executive officer in the case of any public, municipal, governmental, or quasi-public corporation or body or to any person otherwise lawfully so designated.

Service may be made by an officer or deputy authorized by law to serve process in civil actions within the state or territory where such service is made.

Service may be made in any state or territory of the United States. If served in a territory, substitute the word "territory" for the word "state."

The office making the service must swear an affidavit before the clerk, deputy clerk, or judge of the court of which the person is an officer or other person authorized to administer oaths. This affidavit must state the time, place, and manner of service, the official character of the affiant, and the affiant's authority to serve process in civil actions within the state or territory where service is made.

The officer or other person receiving a summons or other process shall serve the same and make return of service promptly. If the process cannot be served it shall be returned to the court within 30 days after the date of issue with a statement of the reason for the failure to serve the same; provided, however, that the time for service thereof may be extended up to ninety days from the date of issue by order of the court.

**THE CIRCUIT COURT OF ST. LOUIS COUNTY, MISSOURI**

Twenty First Judicial Circuit

# NOTICE OF ALTERNATIVE DISPUTE RESOLUTION SERVICES

## Purpose of Notice

As a party to a lawsuit in this court, you have the right to have a judge or jury decide your case. However, most lawsuits are settled by the parties before a trial takes place. This is often true even when the parties initially believe that settlement is not possible. A settlement reduces the expense and inconvenience of litigation. It also eliminates any uncertainty about the results of a trial.

Alternative dispute resolution services and procedures are available that may help the parties settle their lawsuit faster and at less cost. Often such services are most effective in reducing costs if used early in the course of a lawsuit. Your attorney can aid you in deciding whether and when such services would be helpful in your case.

## Your Rights and Obligations in Court Are Not Affected By This Notice

You may decide to use an alternative dispute resolution procedure if the other parties to your case agree to do so. In some circumstances, a judge of this court may refer your case to an alternative dispute resolution procedure described below. These procedures are not a substitute for the services of a lawyer and consultation with a lawyer is recommended. Because you are a party to a lawsuit, you have obligations and deadlines which must be followed whether you use an alternative dispute resolution procedure or not. **IF YOU HAVE BEEN SERVED WITH A PETITION, YOU MUST FILE A RESPONSE ON TIME TO AVOID THE RISK OF DEFAULT JUDGMENT, WHETHER OR NOT YOU CHOOSE TO PURSUE AN ALTERNATIVE DISPUTE RESOLUTION PROCEDURE.**

## Alternative Dispute Resolution Procedures

There are several procedures designed to help parties settle lawsuits. Most of these procedures involve the services of a neutral third party, often referred to as the “neutral,” who is trained in dispute resolution and is not partial to any party. The services are provided by individuals and organizations who may charge a fee for this help. Some of the recognized alternative dispute resolutions procedures are:

**(1) Advisory Arbitration:** A procedure in which a neutral person or persons (typically one person or a panel of three persons) hears both sides and decides the case. The arbitrator’s decision is not binding and simply serves to guide the parties in trying to settle their lawsuit. An arbitration is typically less formal than a trial, is usually shorter, and may be conducted in a private setting at a time mutually agreeable to the parties. The parties, by agreement, may select the arbitrator(s) and determine the rules under which the arbitration will be conducted.

**(2)** **Mediation:** A process in which a neutral third party facilitates communication between the parties to promote settlement. An effective mediator may offer solutions that have not been considered by the parties or their lawyers. A mediator may not impose his or her own judgment on the issues for that of the parties.

**(3)** **Early Neutral Evaluation ("ENE"):** A process designed to bring the parties to the litigation and their counsel together in the early pretrial period to present case summaries before and receive a non-binding assessment from an experienced neutral evaluator. The objective is to promote early and meaningful communication concerning disputes, enabling parties to plan their cases effectively and assess realistically the relative strengths and weaknesses of their positions. While this confidential environment provides an opportunity to negotiate a resolution, immediate settlement is not the primary purpose of this process.

**(4) Mini-Trial:** A process in which each party and their counsel present their case before a selected representative for each party and a neutral third party, to define the issues and develop a basis for realistic settlement negotiations. The neutral third party may issue an advisory opinion regarding the merits of the case. The advisory opinion is not binding.

**(5) Summary Jury Trial:** A summary jury trial is a non binding, informal settlement process in which jurors hear abbreviated case presentations. A judge or neutral presides over the hearing, but there are no witnesses and the rules of evidence are relaxed. After the "trial", the jurors retire to deliberate and then deliver an advisory verdict. The verdict then becomes the starting point for settlement negotiations among the parties.

**Selecting an Alternative Dispute Resolution Procedure and a Neutral**

If the parties agree to use an alternative dispute resolution procedure, they must decide what type of procedure to use and the identity of the neutral. As a public service, the St. Louis County Circuit Clerk maintains a list of persons who are available to serve as neutrals. The list contains the names of individuals who have met qualifications established by the Missouri Supreme Court and have asked to be on the list. The Circuit Clerk also has Neutral Qualifications Forms on file. These forms have been submitted by the neutrals on the list and provide information on their background and expertise. They also indicate the types of alternative dispute resolution services each neutral provides.

A copy of the list may be obtained by request in person and in writing to: Circuit Clerk, Office of Dispute Resolution Services, 105 South Central Avenue, 5th Floor, Clayton, Missouri 63105. The Neutral Qualifications Forms will also be made available for inspection upon request to the Circuit Clerk.

The List and Neutral Qualification Forms are provided only as a convenience to the parties in selecting a neutral. The court cannot advise you on legal matters and can only provide you with the List and Forms. You should ask your lawyer for further information.

**OFFICE OF THE CIRCUIT CLERK**
Missouri's 21st Judicial Circuit, St. Louis County
Civil Department
105 South Central Avenue, Clayton, MO 63105
Hours: Monday through Friday 8:00 A.M. to 5:00 P.M.
Phone: 314-615-8029

SPECIAL NEEDS: If you have special needs addressed by the Americans With Disabilities Act. Please notify the Office of the Circuit Clerk at 314-615-8029. FAX 314-615-8739, email at SLCADA@courts.mo.gov, or through Relay Missouri by dialing 711 0r 800-735-2966, at least three business days in advance of the court proceeding.

# Summons in Civil Case

IN THE 21ST JUDICIAL CIRCUIT, ST. LOUIS COUNTY, MISSOURI

| Judge or Division: DAVID L VINCENT III | **Case Number: 26SL-CC06700** | |
|---|---|---|
| Plaintiff/Petitioner: GEORGE SOLOMON vs. | Plaintiff's/Petitioner's Attorney/Address BENJAMIN STEPHEN MCINTOSH 701 MARKET STREET SUITE 1000 ST. LOUIS, MO 63101 | |
| Defendant/Respondent: LG ELECTRONICS USA, INC. | Court Address: ST LOUIS COUNTY COURT BUILDING 105 SOUTH CENTRAL AVENUE CLAYTON, MO 63105 | (Date File Stamp for Return) |
| Nature of Suit: CC Other Tort | | |

**The State of Missouri to:** **LG ELECTRONICS USA, INC.**
**Alias:**
**CSC-LAWYERS INC SERV CO**
**221 BOLIVAR STREET**
**JEFFERSON CITY, MO 65101**

**Other Addresses:**

You are summoned to appear before this court and to file your pleading to the petition, a copy of which is attached, and to serve a copy of your pleading upon the attorney for plaintiff/petitioner at the above address all within 30 days after receiving this summons, exclusive of the day of service. If you fail to file your pleading, judgment by default may be taken against you for the relief demanded in the petition.

***COURT SEAL OF***

***ST. LOUIS COUNTY***

07-OCT-2026
Date

/S/ Adam Dockery
Clerk

**Further Information:**
AD

## Officer's or Server's Return

**Note to serving officer**: Service should be returned to the court within 30 days after the date of issue.

I certify that I have served the above Summons by: (check one)

☐ delivering a copy of the summons and petition to the defendant/respondent.

☐ leaving a copy of the summons and petition at the dwelling house or usual place of abode of the defendant/respondent with ______________________________, a person at least 18 years of age residing therein.

☐ (for service on a corporation) delivering a copy of the summons and petition to:

__________________________________ (name) ______________________ (title).

☐ other: ____________________________________________________________.

Served at ________________________________________________________ (address)

in _________________________ (County/City of St. Louis), MO, on _______________ (date)

at __________ (time).

| | |
|---|---|
| ________________________________ | ________________________________ |
| Printed Name of Officer or Server | Signature of Officer or Server |

**Must be sworn before a notary public if not served by an authorized officer.**
Subscribed and sworn to before me on ______________________ (date).

*(Seal)*

My commission expires: ______________ ______________________
Date Notary Public

A copy of the summons and petition must be served on **each** defendant/respondent. For methods of service on all classes of suits, see Supreme Court Rule 54.

# THE CIRCUIT COURT OF ST. LOUIS COUNTY, MISSOURI

Twenty First Judicial Circuit

## NOTICE OF ALTERNATIVE DISPUTE RESOLUTION SERVICES

### Purpose of Notice

As a party to a lawsuit in this court, you have the right to have a judge or jury decide your case. However, most lawsuits are settled by the parties before a trial takes place. This is often true even when the parties initially believe that settlement is not possible. A settlement reduces the expense and inconvenience of litigation. It also eliminates any uncertainty about the results of a trial.

Alternative dispute resolution services and procedures are available that may help the parties settle their lawsuit faster and at less cost. Often such services are most effective in reducing costs if used early in the course of a lawsuit. Your attorney can aid you in deciding whether and when such services would be helpful in your case.

### Your Rights and Obligations in Court Are Not Affected By This Notice

You may decide to use an alternative dispute resolution procedure if the other parties to your case agree to do so. In some circumstances, a judge of this court may refer your case to an alternative dispute resolution procedure described below. These procedures are not a substitute for the services of a lawyer and consultation with a lawyer is recommended. Because you are a party to a lawsuit, you have obligations and deadlines which must be followed whether you use an alternative dispute resolution procedure or not. **IF YOU HAVE BEEN SERVED WITH A PETITION, YOU MUST FILE A RESPONSE ON TIME TO AVOID THE RISK OF DEFAULT JUDGMENT, WHETHER OR NOT YOU CHOOSE TO PURSUE AN ALTERNATIVE DISPUTE RESOLUTION PROCEDURE.**

### Alternative Dispute Resolution Procedures

There are several procedures designed to help parties settle lawsuits. Most of these procedures involve the services of a neutral third party, often referred to as the "neutral," who is trained in dispute resolution and is not partial to any party. The services are provided by individuals and organizations who may charge a fee for this help. Some of the recognized alternative dispute resolutions procedures are:

**(1) Advisory Arbitration:** A procedure in which a neutral person or persons (typically one person or a panel of three persons) hears both sides and decides the case. The arbitrator's decision is not binding and simply serves to guide the parties in trying to settle their lawsuit. An arbitration is typically less formal than a trial, is usually shorter, and may be conducted in a private setting at a time mutually agreeable to the parties. The parties, by agreement, may select the arbitrator(s) and determine the rules under which the arbitration will be conducted.

**(2) Mediation:** A process in which a neutral third party facilitates communication between the parties to promote settlement. An effective mediator may offer solutions that have not been considered by the parties or their lawyers. A mediator may not impose his or her own judgment on the issues for that of the parties.

**(3) Early Neutral Evaluation ("ENE"):** A process designed to bring the parties to the litigation and their counsel together in the early pretrial period to present case summaries before and receive a non-binding assessment from an experienced neutral evaluator. The objective is to promote early and meaningful communication concerning disputes, enabling parties to plan their cases effectively and assess realistically the relative strengths and weaknesses of their positions. While this confidential environment provides an opportunity to negotiate a resolution, immediate settlement is not the primary purpose of this process.

**(4) Mini-Trial:** A process in which each party and their counsel present their case before a selected representative for each party and a neutral third party, to define the issues and develop a basis for realistic settlement negotiations. The neutral third party may issue an advisory opinion regarding the merits of the case. The advisory opinion is not binding.

**(5) Summary Jury Trial:** A summary jury trial is a non binding, informal settlement process in which jurors hear abbreviated case presentations. A judge or neutral presides over the hearing, but there are no witnesses and the rules of evidence are relaxed. After the "trial", the jurors retire to deliberate and then deliver an advisory verdict. The verdict then becomes the starting point for settlement negotiations among the parties.

**Selecting an Alternative Dispute Resolution Procedure and a Neutral**

If the parties agree to use an alternative dispute resolution procedure, they must decide what type of procedure to use and the identity of the neutral. As a public service, the St. Louis County Circuit Clerk maintains a list of persons who are available to serve as neutrals. The list contains the names of individuals who have met qualifications established by the Missouri Supreme Court and have asked to be on the list. The Circuit Clerk also has Neutral Qualifications Forms on file. These forms have been submitted by the neutrals on the list and provide information on their background and expertise. They also indicate the types of alternative dispute resolution services each neutral provides.

A copy of the list may be obtained by request in person and in writing to: Circuit Clerk, Office of Dispute Resolution Services, 105 South Central Avenue, 5th Floor, Clayton, Missouri 63105. The Neutral Qualifications Forms will also be made available for inspection upon request to the Circuit Clerk.

The List and Neutral Qualification Forms are provided only as a convenience to the parties in selecting a neutral. The court cannot advise you on legal matters and can only provide you with the List and Forms. You should ask your lawyer for further information.

**OFFICE OF THE CIRCUIT CLERK**

Missouri's 21st Judicial Circuit, St. Louis County
Civil Department
105 South Central Avenue, Clayton, MO 63105
Hours: Monday through Friday 8:00 A.M. to 5:00 P.M.
Phone: 314-615-8029

SPECIAL NEEDS: If you have special needs addressed by the Americans With Disabilities Act. Please notify the Office of the Circuit Clerk at 314-615-8029. FAX 314-615-8739, email at SLCADA@courts.mo.gov, or through Relay Missouri by dialing 711 0r 800-735-2966, at least three business days in advance of the court proceeding.

# Summons in Civil Case

IN THE 21ST JUDICIAL CIRCUIT, ST. LOUIS COUNTY, MISSOURI

| Judge or Division:<br>DAVID L VINCENT III | **Case Number: 26SL-CC06700** | |
|---|---|---|
| Plaintiff/Petitioner:<br>GEORGE SOLOMON<br>vs. | Plaintiff's/Petitioner's Attorney/Address<br>BENJAMIN STEPHEN MCINTOSH<br>701 MARKET STREET<br>SUITE 1000<br>ST. LOUIS, MO 63101 | |
| Defendant/Respondent:<br>LG ELECTRONICS USA, INC. | Court Address:<br>ST LOUIS COUNTY COURT BUILDING<br>105 SOUTH CENTRAL AVENUE<br>CLAYTON, MO 63105 | (Date File Stamp for Return) |
| Nature of Suit:<br>CC Other Tort | | |

**The State of Missouri to: CARRY TECHNOLOGIES INC**
**Alias:**
**DBA: HIGHTOUCH**
**TELOS LEGAL CORP**
**222 E DUNKLIN STE 102**
**JEFFERSON CITY, MO 65101**

**Other Addresses:**

You are summoned to appear before this court and to file your pleading to the petition, a copy of which is attached, and to serve a copy of your pleading upon the attorney for plaintiff/petitioner at the above address all within 30 days after receiving this summons, exclusive of the day of service. If you fail to file your pleading, judgment by default may be taken against you for the relief demanded in the petition.

***COURT SEAL OF***

***ST. LOUIS COUNTY***

07-OCT-2026
Date

/S/ Adam Dockery
Clerk

**Further Information:**
AD

**Officer's or Server's Return**

**Note to serving officer**: Service should be returned to the court within 30 days after the date of issue.

I certify that I have served the above Summons by: (check one)

☐ delivering a copy of the summons and petition to the defendant/respondent.

☐ leaving a copy of the summons and petition at the dwelling house or usual place of abode of the defendant/respondent with ______________________________, a person at least 18 years of age residing therein.

☐ (for service on a corporation) delivering a copy of the summons and petition to:

______________________________ (name) ______________________________ (title).

☐ other: ______________________________________________.

Served at ______________________________________________ (address)

in ______________________________ (County/City of St. Louis), MO, on ____________________ (date)

at ______________ (time).

______________________________ ______________________________
Printed Name of Officer or Server Signature of Officer or Server

**Must be sworn before a notary public if not served by an authorized officer.**
Subscribed and sworn to before me on ______________________________ (date).

*(Seal)*

My commission expires: ____________________ ______________________________
Date Notary Public

A copy of the summons and petition must be served on **each** defendant/respondent. For methods of service on all classes of suits, see Supreme Court Rule 54.

**THE CIRCUIT COURT OF ST. LOUIS COUNTY, MISSOURI**

Twenty First Judicial Circuit

**NOTICE OF ALTERNATIVE DISPUTE RESOLUTION SERVICES**

**Purpose of Notice**

As a party to a lawsuit in this court, you have the right to have a judge or jury decide your case. However, most lawsuits are settled by the parties before a trial takes place. This is often true even when the parties initially believe that settlement is not possible. A settlement reduces the expense and inconvenience of litigation. It also eliminates any uncertainty about the results of a trial.

Alternative dispute resolution services and procedures are available that may help the parties settle their lawsuit faster and at less cost. Often such services are most effective in reducing costs if used early in the course of a lawsuit. Your attorney can aid you in deciding whether and when such services would be helpful in your case.

**Your Rights and Obligations in Court Are Not Affected By This Notice**

You may decide to use an alternative dispute resolution procedure if the other parties to your case agree to do so. In some circumstances, a judge of this court may refer your case to an alternative dispute resolution procedure described below. These procedures are not a substitute for the services of a lawyer and consultation with a lawyer is recommended. Because you are a party to a lawsuit, you have obligations and deadlines which must be followed whether you use an alternative dispute resolution procedure or not. **IF YOU HAVE BEEN SERVED WITH A PETITION, YOU MUST FILE A RESPONSE ON TIME TO AVOID THE RISK OF DEFAULT JUDGMENT, WHETHER OR NOT YOU CHOOSE TO PURSUE AN ALTERNATIVE DISPUTE RESOLUTION PROCEDURE.**

**Alternative Dispute Resolution Procedures**

There are several procedures designed to help parties settle lawsuits. Most of these procedures involve the services of a neutral third party, often referred to as the "neutral," who is trained in dispute resolution and is not partial to any party. The services are provided by individuals and organizations who may charge a fee for this help. Some of the recognized alternative dispute resolutions procedures are:

**(1) Advisory Arbitration:** A procedure in which a neutral person or persons (typically one person or a panel of three persons) hears both sides and decides the case. The arbitrator's decision is not binding and simply serves to guide the parties in trying to settle their lawsuit. An arbitration is typically less formal than a trial, is usually shorter, and may be conducted in a private setting at a time mutually agreeable to the parties. The parties, by agreement, may select the arbitrator(s) and determine the rules under which the arbitration will be conducted.

**(2) Mediation:** A process in which a neutral third party facilitates communication between the parties to promote settlement. An effective mediator may offer solutions that have not been considered by the parties or their lawyers. A mediator may not impose his or her own judgment on the issues for that of the parties.

**(3) Early Neutral Evaluation ("ENE"):** A process designed to bring the parties to the litigation and their counsel together in the early pretrial period to present case summaries before and receive a non-binding assessment from an experienced neutral evaluator. The objective is to promote early and meaningful communication concerning disputes, enabling parties to plan their cases effectively and assess realistically the relative strengths and weaknesses of their positions. While this confidential environment provides an opportunity to negotiate a resolution, immediate settlement is not the primary purpose of this process.

**(4) Mini-Trial:** A process in which each party and their counsel present their case before a selected representative for each party and a neutral third party, to define the issues and develop a basis for realistic settlement negotiations. The neutral third party may issue an advisory opinion regarding the merits of the case. The advisory opinion is not binding.

**(5) Summary Jury Trial:** A summary jury trial is a non binding, informal settlement process in which jurors hear abbreviated case presentations. A judge or neutral presides over the hearing, but there are no witnesses and the rules of evidence are relaxed. After the "trial", the jurors retire to deliberate and then deliver an advisory verdict. The verdict then becomes the starting point for settlement negotiations among the parties.

**Selecting an Alternative Dispute Resolution Procedure and a Neutral**

If the parties agree to use an alternative dispute resolution procedure, they must decide what type of procedure to use and the identity of the neutral. As a public service, the St. Louis County Circuit Clerk maintains a list of persons who are available to serve as neutrals. The list contains the names of individuals who have met qualifications established by the Missouri Supreme Court and have asked to be on the list. The Circuit Clerk also has Neutral Qualifications Forms on file. These forms have been submitted by the neutrals on the list and provide information on their background and expertise. They also indicate the types of alternative dispute resolution services each neutral provides.

A copy of the list may be obtained by request in person and in writing to: Circuit Clerk, Office of Dispute Resolution Services, 105 South Central Avenue, 5th Floor, Clayton, Missouri 63105. The Neutral Qualifications Forms will also be made available for inspection upon request to the Circuit Clerk.

The List and Neutral Qualification Forms are provided only as a convenience to the parties in selecting a neutral. The court cannot advise you on legal matters and can only provide you with the List and Forms. You should ask your lawyer for further information.

**OFFICE OF THE CIRCUIT CLERK**

Missouri's 21st Judicial Circuit, St. Louis County
Civil Department
105 South Central Avenue, Clayton, MO 63105
Hours: Monday through Friday 8:00 A.M. to 5:00 P.M.
Phone: 314-615-8029

SPECIAL NEEDS: If you have special needs addressed by the Americans With Disabilities Act. Please notify the Office of the Circuit Clerk at 314-615-8029. FAX 314-615-8739, email at SLCADA@courts.mo.gov, or through Relay Missouri by dialing 711 0r 800-735-2966, at least three business days in advance of the court proceeding.

Electronically Filed - ST LOUIS COUNTY - October 15, 2026 - 09:18 AM

# Summons in Civil Case

IN THE 21ST JUDICIAL CIRCUIT, ST. LOUIS COUNTY, MISSOURI

| | | |
|---|---|---|
| Judge or Division:<br>DAVID L VINCENT III | **Case Number: 26SL-CC06700** | |
| Plaintiff/Petitioner:<br>GEORGE SOLOMON<br>vs. | Plaintiff's/Petitioner's Attorney/Address<br>BENJAMIN STEPHEN MCINTOSH<br>701 MARKET STREET<br>SUITE 1000<br>ST. LOUIS, MO 63101 | |
| Defendant/Respondent:<br>LG ELECTRONICS USA, INC. | Court Address:<br>ST LOUIS COUNTY COURT BUILDING<br>105 SOUTH CENTRAL AVENUE<br>CLAYTON, MO 63105 | (Date File Stamp for Return) |
| Nature of Suit:<br>CC Other Tort | | |

**The State of Missouri to:** **LG ELECTRONICS USA, INC.**
**Alias:**
**CSC-LAWYERS INC SERV CO**
**221 BOLIVAR STREET**
**JEFFERSON CITY, MO 65101**

**Other Addresses:**

You are summoned to appear before this court and to file your pleading to the petition, a copy of which is attached, and to serve a copy of your pleading upon the attorney for plaintiff/petitioner at the above address all within 30 days after receiving this summons, exclusive of the day of service. If you fail to file your pleading, judgment by default may be taken against you for the relief demanded in the petition.

***COURT SEAL OF***

***ST. LOUIS COUNTY***

07-OCT-2026
Date

/S/ Adam Dockery
Clerk

**Further Information:**
AD

SJRC (07-25) SM30 (SMCC) *For Court Use Only:* **Document ID # 26-SMCC-12473**

Civil Procedure Form No. 1, SCR 54.01 – 54.05, 54.13, and 54.20; 506.120 – 506.140, and 506.150 RSMo

Electronically Filed - ST LOUIS COUNTY - October 15, 2026 - 09:18 AM

**Case Number: 26SL-CC06700**

**Officer's or Server's Return**

**Note to serving officer**: Service should be returned to the court within 30 days after the date of issue.

I certify that I have served the above Summons by: (check one)

☐ delivering a copy of the summons and petition to the defendant/respondent.

☐ leaving a copy of the summons and petition at the dwelling house or usual place of abode of the defendant/respondent with ______________________, a person at least 18 years of age residing therein.

☒ (for service on a corporation) delivering a copy of the summons and petition to:
Steve Waters (name) Authorized Agent (title).

☐ other: ______________________.

Served at 221 Bolivar st. Jefferson City mo. (address)
in Cole (County/City of St. Louis), MO, on 10-8-26 (date)
at ______________ (time).

Rufus R. Harmon
Printed Name of Officer or Server

Rufus R. Harmon
Signature of Officer or Server

KELSEY SCHRIMPF
Notary Public, Notary Seal
State of Missouri
Cole County
Commission # 23381805
My Commission Expires 08-14-2027

(Seal)

**Must be sworn before a notary public if not served by an authorized officer.**
Subscribed and sworn to before me on 10/12/26 (date).
My commission expires: 8/14/27
Date

Kelsey Schrimpf
Notary Public

A copy of the summons and petition must be served on **each** defendant/respondent. For methods of service on all classes of suits, see Supreme Court Rule 54.

Electronically Filed - ST LOUIS COUNTY - October 15, 2026 - 09:18 AM

# Summons in Civil Case

IN THE 21ST JUDICIAL CIRCUIT, ST. LOUIS COUNTY, MISSOURI

| | | |
|---|---|---|
| Judge or Division:<br>DAVID L VINCENT III | **Case Number: 26SL-CC06700** | |
| Plaintiff/Petitioner:<br>GEORGE SOLOMON<br>vs. | Plaintiff's/Petitioner's Attorney/Address<br>BENJAMIN STEPHEN MCINTOSH<br>701 MARKET STREET<br>SUITE 1000<br>ST. LOUIS, MO 63101 | |
| Defendant/Respondent:<br>LG ELECTRONICS USA, INC. | Court Address:<br>ST LOUIS COUNTY COURT BUILDING<br>105 SOUTH CENTRAL AVENUE<br>CLAYTON, MO 63105 | (Date File Stamp for Return) |
| Nature of Suit:<br>CC Other Tort | | |

**The State of Missouri to:** **CARRY TECHNOLOGIES INC**
**Alias:**
**DBA: HIGHTOUCH**
**TELOS LEGAL CORP**
**222 E DUNKLIN STE 102**
**JEFFERSON CITY, MO 65101**

**Other Addresses:**

You are summoned to appear before this court and to file your pleading to the petition, a copy of which is attached, and to serve a copy of your pleading upon the attorney for plaintiff/petitioner at the above address all within 30 days after receiving this summons, exclusive of the day of service. If you fail to file your pleading, judgment by default may be taken against you for the relief demanded in the petition.

***COURT SEAL OF***

***ST. LOUIS COUNTY***

07-OCT-2026
Date

/S/ Adam Dockery
Clerk

**Further Information:**
AD


Civil Procedure Form No. 1, SCR 54.01 – 54.05, 54.13, and 54.20; 506.120 – 506.140, and 506.150 RSMo

Electronically Filed - ST LOUIS COUNTY - October 15, 2026 - 09:18 AM

**Case Number: 26SL-CC06700**

**Officer's or Server's Return**

**Note to serving officer**: Service should be returned to the court within 30 days after the date of issue.

I certify that I have served the above Summons by: (check one)

☐ delivering a copy of the summons and petition to the defendant/respondent.

☐ leaving a copy of the summons and petition at the dwelling house or usual place of abode of the defendant/respondent with ______________________, a person at least 18 years of age residing therein.

☒ (for service on a corporation) delivering a copy of the summons and petition to:
Shelia Smith (name) Authorized Agent (title).

☐ other: ______________________.

Served at 222 E. Dunklin Jefferson City, MO. (address)
in Cole (County/City of St. Louis), MO, on 10-08-26 (date)
at 1:45 p.m. (time).

Rufus R. Harmon
Printed Name of Officer or Server

Rufus R. Harmon
Signature of Officer or Server

KELSEY SCHRIMPF
Notary Public, Notary Seal
State of Missouri
Cole County
Commission # 23381805
My Commission Expires 08-14-2027

**Must be sworn before a notary public if not served by an authorized officer.**
Subscribed and sworn to before me on 10/12/26 (date).
(Seal)
My commission expires: 8/14/27 Date
Kelsey Schrimpf Notary Public

A copy of the summons and petition must be served on **each** defendant/respondent. For methods of service on all classes of suits, see Supreme Court Rule 54.

Electronically Filed - ST LOUIS COUNTY - October 21, 2026 - 02:04 PM

# AFFIDAVIT OF SERVICE for ALPHONSO INC DBA LG AD SOLUTIONS

IN THE CIRCUIT COURT FOR ST. LOUIS COUNTY • STATE OF MISSOURI

Plaintiff: GEORGE SOLOMON, et al

vs.

Defendants: LG Electrics USA, INC., et al

Case Number: 26SL-CC06700

State of Delaware, County of New Castle

I, Selena Cabrera, being duly sworn on oath deposes and says: I am a citizen of the United States, over the age of 18, not a party in this action

I, Selena Cabrera, do hereby affirm that on the 20th day of October 2026 at 11:56 am (ET), I served true copies of a Summons and Class Action Petition, to:

ALPHONSO INC DBA LG AD SOLUTIONS
c/o: THE CORP TRUST COMPANY, CORPORATION TRUST CENTER
1209 ORANGE STREET
WILMINGTON, DE 19801

Corporate Service: On October 20, 2026 at 11:56 am (ET) to **Robin Hutt-Banks**, Intake Specialist II

(African American female, 66 yrs., about 5'5", about 180 lbs., black hair, glasses)

I declare under penalty of perjury under the laws of the State, the foregoing is true and correct

[signature] October 21, 2026. Process Server, Selena Cabrera

SWORN TO AND SUBSCRIBED before me this 21st day of October 2026

[signature]
NOTARY PUBLIC

My Commission Expires: July 31, 2028

HERMINIO CABRERA
NOTARY PUBLIC
STATE OF DELAWARE
My Commission Expires 07-31-2028